STATE OF CONNECTICUT *v.* JAMES BOSCARINO
(AC 24127)

DiPentima, McLachlan and Hennessy, Js.

Argued September 22—officially released December 14, 2004

*Paul Bourdoulous*, certified legal intern, with whom were *Mark Rademacher*, assistant public defender, and, on the brief, *Moira L. Buckley*, former assistant public defender, and *Michael Chirico*, certified legal intern, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Chris A. Pelosi*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, James Boscarino, appeals from the judgments of conviction, rendered after a jury trial, of one count of stalking in the first degree in violation of General Statutes § 53a-181c (a) (2)[1] and five counts of harassment in the second degree in violation of General Statutes § 53a-183 (a) (2).[2] He claims that (1) there was insufficient evidence to sustain the jury's guilty verdict on the charge of stalking in the first degree, (2) the trial court marshaled facts in an inaccurate manner concerning the stalking charge, (3) the court improperly admitted evidence of his prior acts of misconduct and (4) consolidation of the two cases deprived him of a fair trial. We affirm in part and reverse in part the judgments of the trial court.

This appeal arises from the defendant's conviction for harassing two women in two separate cases, which were consolidated at trial. The first case involved the

[1] General Statutes § 53a-181c (a) provides in relevant part: "A person is guilty of stalking in the first degree when he commits stalking in the second degree as provided in section 53a-181d and . . . (2) such conduct violates a court order in effect at the time of the offense . . . ."

General Statutes § 53a-181d provides: "(a) A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety.

"(b) Stalking in the second degree is a class A misdemeanor."

[2] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm . . . ."

harassment of J,[3] a manager at an employment agency in Farmington. She and the defendant had a history that preceded the charges in this case. The defendant first met J at a job fair in September, 1999. On June 29, 2000, J interviewed the defendant, after which she informed him that the employment agency would not be able to place him in any available positions. On August 4, 2000, J received a handwritten letter at work marked "Attn: [J]." The letter began, "Howdy Slut!" and then described, in explicit detail, several sexual acts that the author wanted to perform with J. Included with the letter were two pornographic pictures. The letter was signed "J.J." Frightened and upset by the letter, J called the Farmington police.

One week later, on August 11, 2000, another letter addressed to J's attention arrived at her workplace. Like the first letter, it described sexual acts that the author wanted to perform with J and contained a pornographic picture. In addition, the author stated, "Saw you the other day," and promised that "I'll be in touch . . . ." That second letter was also signed "J.J." J again notified the Farmington police. J received a third letter at work on August 21, 2000. Like the previous two letters, this one described sexual acts that the author wanted to perform with her, contained pornographic pictures and stated, "Saw you the other day." The letter also asked, "You still living at [a certain specified address]?" and promised, "I'll be in touch soon . . . ." Looking in a telephone book, J found someone with the same name listed at that address. Although it was not her address, the statement terrified J nonetheless. That letter, too, was signed "J.J."

After notifying the Farmington police, J noticed a resemblance between the author's handwriting and that

---

[3] In accordance with the spirit and intent of our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims of harassment in this case. See General Statutes § 54-86e.

on the defendant's recent job application. The police contacted the defendant, who agreed to meet with them at a doughnut shop, at which time he orally confessed to having written the letters. The defendant voluntarily provided a written statement in which he confessed to his involvement and explained that he had written the letters out of anger for not getting a job.

The defendant subsequently was charged with two counts of harassment in the second degree in violation of § 53a-183 (a) (2). On November 14, 2000, he pleaded guilty under the *Alford* doctrine[4] to both counts. As a special condition of his probation, the defendant was ordered not to initiate any contact with J for one year.

The facts giving rise to the charges at issue in this appeal began four months later, on March 30, 2001, when J's duties required her to attend a job fair at Manchester Community College (Manchester fair). At her office that afternoon, J discovered that among the resumes collected was one belonging to the defendant. J did not see the defendant at the fair. On July 10 and 11, 2001, J received two messages addressed to her work e-mail. The July 10 e-mail stated that the author was "[t]rying to get in touch with a [J] in your office for an adult movie audition," while the July 11 e-mail indicated that "she would make a world-class porn actress." Both messages were signed "Frank L. Garvin" and originated from "frankgarvin@hotmail.com." J notified the police, who could not successfully uncover the origin of the e-mails.

J attended another job fair at Asnuntuck Community College on October 30, 2001 (Asnuntuck fair). At that

---

[4] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The *Alford* doctrine allows a defendant to plead guilty without admitting guilt. In pleading guilty, however, the defendant "acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Henry* v. *Commissioner of Correction,* 60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000).

fair, she saw the defendant seated at the booth to her right. The defendant looked up, made eye contact with her and then resumed completion of a job application. Once finished, the defendant left the booth and began circling the job fair. The defendant made eye contact with J several times as he circled and did not stop at any other employment booths. J was frightened and had a coworker walk her to her car at the end of the day.

The next day, J received a letter at work marked "Attn: [J]." The sexually explicit letter was accompanied by a pornographic picture. The name on the envelope's return address was "F. Garvin," and the letter was signed "Fred." J contacted the police, and the defendant was thereafter charged with stalking in the first degree in violation of § 53a-181c (a) (2) and three counts of harassment in the second degree in violation of § 53a-183 (a) (2).

The second case involved the harassment of K, a staffing specialist at another employment agency in Farmington. In the spring of 2000, the defendant submitted an application to that agency. After reviewing his resume, K attempted to get in touch with the defendant. Although she left messages three times requesting a reply, the defendant did not respond. On July 12, 2001, the employment agency received an e-mail from "frankgarvin@ hotmail.com." The subject line of the e-mail was "Fellatio," and the message inquired as to whether [K] or a coworker "is still interested" in performing that act. The author then requested that the message be passed along "to concerned parties." The message was signed "Frank L. Garvin."

One week later, the employment agency received a second e-mail from "frankgarvin@hotmail.com." The subject line of the e-mail was "Miss you," and the message stated that the author was disappointed "that neither [K] nor [her coworker] responded to my invitation."

The author wrote: "[P]lease have them get in touch for some naughty conversation." The message was signed "Frank." In response, K contacted the Farmington police. In addition, the agency's security department replied to both e-mails, requesting that the author cease and desist.

On November 14, 2001, K received a handwritten letter at work marked "Attn: [K]." The author indicated that he had been watching K and graphically described his sexual fantasies about her. The author invited K to "watch me masturbate" at the parking lot of the Simsbury public library at a specified date and time. Included with the letter was a pornographic picture. The letter was signed "F.G.," which K recognized as being the initials of "Frank Garvin," the author of the prior e-mail messages. K again contacted the Farmington police, who recognized the name "Frank Garvin" and the pattern of sexually explicit letters, e-mails and pornographic pictures from their earlier work on J's case. The defendant subsequently was charged with three counts of harassment in the second degree in violation of § 53a-183 (a) (2).

On July 29, 2002, the state filed a motion for joinder of the two cases, which the court granted.[5] Following a trial by jury, the defendant was convicted on all three counts of harassment in the second degree in the case involving K. In the case involving J, the defendant was convicted of stalking in the first degree and two counts of harassment in the second degree. The defendant was sentenced to a total effective term of five years and three months imprisonment, with five years probation. This appeal followed.

I

The defendant claims that there was insufficient evidence to sustain the jury's guilty verdict on the charge

[5] The defendant filed a motion for severance requesting separate trials for each case, which the court denied.

of stalking in the first degree in violation of § 53a-181c (a) (2). We agree with the defendant.

The standard of review for a sufficiency of the evidence claim employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense[s], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). "[I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Internal quotation marks omitted.) *State* v. *Niemeyer*, supra, 258 Conn. 519.

To establish guilt of stalking in the first degree, the state was required to prove, inter alia, that the defendant repeatedly followed J. See General Statutes §§ 53a-181c and 53a-181d. "Acting repeatedly in the context of the statute means precisely what the commonly approved usage of the word suggests—acting on more than one occasion. An isolated act of following . . . cannot constitute stalking." (Internal quotation marks omitted.)

*State* v. *Jackson*, 56 Conn. App. 264, 273, 742 A.2d 812, cert. denied, 252 Conn. 938, 747 A.2d 4 (2000).

We have stated that "Webster's Ninth New Collegiate Dictionary defines follow to mean to go, proceed, or come after and pursue in an effort to overtake. As used in § 53a-181d . . . the following must have a predatory thrust to it. The statute does not encompass following that is aimless, unintentional, accidental or undertaken for a lawful purpose. Of course, following implies proximity in space as well as time. Whether someone has deliberately maintained sufficient visual or physical proximity with another person, uninterrupted, over a substantial enough period of time to constitute following will depend upon a variety of differing factors in each case." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 56 Conn. App. 272–73.

The question before us is whether there existed sufficient evidence from which the jury reasonably could conclude that the defendant had followed J more than once. At trial, the state contended that the defendant had followed J twice, first at the Manchester fair and later at the Asnuntuck fair.

We consider first the Manchester fair. The Manchester fair was held from 9 a.m. to 1 p.m. on March 30, 2001. J attended the first two hours of the fair. J testified that she never saw the defendant that day. After she reviewed resumes collected at the fair, J saw the defendant's resume. The existence of that resume is the only evidence that the defendant attended the fair. The existence of the resume alone is insufficient to prove that the defendant maintained sufficient visual or physical proximity to J, uninterrupted, over a substantial enough period of time to constitute "following" at the Manchester fair. See id., 272. First, there is no evidence in the record that the defendant personally attended the fair. Conceivably, a friend could have submitted the defen-

dant's resume on that day. Second, there is no evidence in the record indicating that the defendant attended the fair during the two hours that J was present. On the basis of J's testimony that she never saw the defendant at the fair, it is equally plausible that he attended the fair during the two hours that J was not present. In addition, the record is devoid of evidence indicating that the resumes J reviewed at her office were collected solely during the two hours she attended the fair.

In other cases in which we have considered our stalking statutes, the juries were presented with evidence that the defendants were actually seen in the presence of the victims on more than one instance. See id., 266–70; *State* v. *Cummings*, 46 Conn. App. 661, 663–66, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997); *State* v. *Marsala*, 44 Conn. App. 84, 86–87, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). No such evidence was presented to the jury here.

The state counters that because the defendant's resume was collected on March 30, 2001, the jury reasonably could infer his presence at the fair. Such inference is insufficient to satisfy the stalking statute. To convict the defendant, the state was required to prove that he not only attended the Manchester fair, but also that he had followed J. Following is an essential element of the crime of stalking and, therefore, must be proven beyond a reasonable doubt in order to find the defendant guilty. After reviewing the record before us, we conclude that there was insufficient evidence presented to the jury that the defendant maintained sufficient visual or physical proximity to J, uninterrupted, over a substantial period of time at the Manchester fair.

Because we conclude that insufficient evidence existed to support the conclusion that the defendant followed J at the Manchester fair, we need not consider whether he did so seven months later at the Asnuntuck

fair. Even if we presume that he did, an isolated act of following cannot constitute stalking. See *State* v. *Jackson*, supra, 56 Conn. App. 273. Accordingly, we reverse the judgment of conviction of stalking in the first degree.

## II

The defendant claims that the court marshaled facts in an inaccurate manner concerning the stalking charge. In light of our disposition of the defendant's first claim, we need not consider the merits of this claim.

## III

The defendant next contends that the court improperly admitted evidence of his prior acts of misconduct. Specifically, he claims that admission of evidence and testimony regarding his 2000 conviction on two counts of harassment in the second degree was more prejudicial than probative. We disagree.

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 662, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

Generally, evidence of a defendant's prior misconduct is inadmissible to prove guilt of the crime of which the defendant is accused. "Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person." Conn. Code Evid. § 4-5 (a). Nevertheless, "[e]vidence of other crimes, wrongs or acts of a person is admissible for purposes . . . such as to prove intent, identity, mal-

ice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Id., § 4-5 (b); see also *State* v. *Henry*, 41 Conn. App. 169, 177, 674 A.2d 862 (1996). "To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence."[6] (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 397, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

Here, the court permitted the state to introduce into evidence the three letters sent to J by the defendant in August, 2000, and the testimony of J and two police officers concerning those letters for the limited purposes of proving the identity of the author of the letters to J and K in 2001. The letters were also introduced to show a common scheme or plan on the part of the defendant to send harassing mail. We earlier detailed the specific facts surrounding the 2000 letters.

The theory of defense was that the defendant did not write the letters sent in 2001. As such, the identity of the author was an issue before the jury and, hence, was both relevant and material. See *State* v. *Valentine*, 240 Conn. 395, 404, 692 A.2d 727 (1997).

---

[6] Evidence is material when it is offered to prove a fact directly in issue or a fact probative of a matter in issue. C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.1.3. Relevant evidence is defined in the Connecticut Code of Evidence § 4-1 as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence."

Likewise, the court explained that the "similarity of these letters would indicate that the defendant had a common scheme of harassing women who work in employment agencies and that both sets of letters were part of the overall scheme."[7] The court thus concluded that the probative value of the letters "is extremely high." Recognizing that the letters were indeed prejudicial, the court nevertheless found any prejudice to be outweighed by their probative value.

"The primary responsibility for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." *State* v. *George B.*, 258 Conn. 779, 793, 785 A.2d 573 (2001). We can see no reason to disturb the court's conclusion in this instance. Whatever undue prejudice that may have existed was properly mitigated by the court's detailed instructions to the jury. At trial, the court provided a cautionary instruction to the jury in which it explained that the August, 2000 letters were being admitted for limited purposes and warned the jury that "you are not to consider [the evidence] as showing that [the defendant] has a bad character and that he has a propensity to send such letters or do such things." In addition, the court again addressed the evidence of prior misconduct in its final instructions to the jury, stating that it was "not admitted to show the bad character or criminal propensity of the defendant" and that "you may consider this evidence . . . for those limited purposes [of showing identity

---

[7] The defendant apparently agrees. As his brief stated: "The cases at bar did not involve discrete, easily distinguishable factual scenarios. . . . The similarities between the two cases were numerous. The letters were sent to [J] and [K] within two weeks of one another. Likewise, the e-mails were received by both women within days of each other. The perpetrator(s) sent the letter and e-mails to both women at their place of work. Both women shared a similar profile. They were young working professionals at employment agencies stationed in Farmington."

and common scheme or plan] and no other." "Our juris-prudence is clear . . . that unless there is a clear indi-cation to the contrary, a jury is presumed to follow the court's instructions." *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 335, 838 A.2d 135 (2004); *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992).

We therefore conclude that the court did not abuse its discretion in admitting evidence regarding the defen-dant's 2000 conviction on two counts of harassment in the second degree.

IV

The defendant's final claim is that consolidation of the two cases deprived him of a fair trial. Following the state's motion for joinder, the defendant filed a motion for severance, which the court denied. "The decision of whether to order severance of cases joined for trial is within the discretion of the trial court, and the exercise of that discretion [may] not be disturbed unless it has been manifestly abused. . . . It is the defendant's burden on appeal to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Boscarino*, 204 Conn. 714, 720–21, 529 A.2d 1260 (1987). The defendant has not satisfied that burden.

In *Boscarino*, our Supreme Court recognized three factors that must be considered by a trial court in determining whether joinder is appropriate. Those fac-tors are (1) whether the charges involve discrete, easily distinguishable factual scenarios, (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part and (3) the duration and complexity of the trial. Id., 722–23. During argument on the state's motion for joinder, the defen-

dant conceded that the second and third *Boscarino* factors were inapplicable. Our review, therefore, is confined to a consideration of the first *Boscarino* factor.

The first *Boscarino* factor requires the joined cases to involve discrete, easily distinguishable factual scenarios. It is the defendant's contention that the two cases are "identical, but for the change of the [victims'] names." The court disagreed. It noted that there were two different victims and that the case against one included a stalking charge that the other did not. The court also pointed out that J knew the defendant while K did not. Moreover, the court observed that the evidence of one case likely could be used to prove identity or common scheme in the other case, which weighed in favor of joinder. While recognizing the similarities between the two cases, the court found that they would not "be of such a scenario that would confuse the jurors." It accordingly denied the defendant's motion for severance.

Belabored analysis is not required here. Factually similar cases do not necessarily mandate severance. See, e.g., *State* v. *Rivera*, 63 Conn. App. 319, 775 A.2d 1006 (2001) (joinder of sexual assault cases proper when victims were both children, related to defendant and both assaults committed in defendant's home), aff'd, 260 Conn. 486, 798 A.2d 958 (2002). In this case, as the court noted, several distinctions existed between the two cases. Moreover, at trial, the state presented the evidence separately with respect to the two cases. There was, thus, no genuine concern that the jury would commingle the facts or charges stemming from those two events. See *State* v. *Atkinson*, 235 Conn. 748, 764, 670 A.2d 276 (1996).

In addition, the court instructed the jury on the first day of trial that there were two separate cases that

required separate consideration. In its final charge, the court again instructed the jury: "[T]he defendant is on trial before you in two separate cases . . . . You must keep each case separate, in your minds, and decide whether the defendant is guilty or not guilty, in each case, separate and independent of the other." The court instructed the jury separately with respect to the two cases and the counts contained therein. The court then concluded: "Remember, there are four counts in the case pertaining to [J] and three counts in the case pertaining to [K]. You must consider each count separately, as it is set forth in each information, and render a verdict of guilty or not guilty on that count depending upon your findings concerning the elements of that count."[8] Our Supreme Court has explained that "in cases in which the likelihood of prejudice is not overwhelming . . . curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Internal quotation marks omitted.) *State* v. *Atkinson*, supra, 235 Conn. 766–67.

On the basis of the foregoing, we conclude that the defendant did not suffer substantial injustice by the joinder of the two cases. Accordingly, the court did not abuse its discretion in denying the defendant's motion for severance.

The judgment in the first case is reversed only as to the conviction of stalking in the first degree and the case is remanded with direction to render judgment of acquittal on that charge. The judgment in the second case is affirmed.

In this opinion the other judges concurred.

---

[8] We note that the jury found the defendant not guilty of one count of harassment in the second degree.