******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ALEX B.*
(AC 35752)

Lavine, Beach and Borden, Js.

*Argued March 4—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of New Haven, Gold, J.)

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Stacey M. Miranda*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Alex B., appeals from the judgment of conviction rendered after a jury trial of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). In this appeal, the defendant claims that: (1) his constitutional right to due process was violated when the prosecutor improperly questioned a child forensic interviewer, which improperly bolstered the victim's credibility; and (2) the court abused its discretion by admitting testimony that did not constitute evidence of flight as a basis for a consciousness of guilt instruction, which the court ultimately did not deliver to the jury. We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

Following a jury trial, the defendant was convicted of one count of sexual assault in the first degree, and one count of risk of injury to a child. The defendant was sentenced to thirteen years incarceration with five years special parole on each count, to run concurrently. This appeal followed.

The jury reasonably could have found the following facts. The defendant was the stepfather of the victim. In 2008, when the victim was eleven years old, she disclosed to her sister and mother that on approximately two or three occasions, the defendant forced her to perform fellatio on him. The victim's mother informed the police of the victim's allegations and, following an investigation, a warrant was issued for the defendant's arrest. Additional facts will be set forth as necessary.

I

The defendant first claims that the prosecutor violated his right to due process by impermissibly using the testimony of a forensic interviewer to bolster the victim's credibility. The state contends that the defendant's claim is, in essence, an unpreserved evidentiary claim. We agree with the state.

The following additional procedural history is relevant to our review of this claim. Pursuant to the victim's allegations, Florence Mackey, a forensic interviewer employed by a child sexual abuse clinic, interviewed the victim for the purpose of gathering information about her allegations. During the state's direct examination of Mackey, the prosecutor asked her, "once you do a forensic interview and it has been completed, do you make referrals from that interview, if . . . necessary?" Mackey responded, "[i]f necessary, we make a referral to treatment, mental health treatment . . . for the child." Toward the end of the state's examination of Mackey, the prosecutor engaged in the following line of questioning:

"[The Prosecutor]: After you did this interview with [the victim], did you refer her anywhere?

"[Mackey]: I referred her to a [certain] program . . . for treatment, mental health treatment.

"[The Prosecutor]: . . . And could you explain to the members of the jury what [that program] is?

"[Mackey]: The [program] has clinicians who are specially trained where there's a concern or where a child's disclosed sexual abuse and they're able to really take the children rather quickly . . . and make an appointment for them. And [the clinicians] also sit on [a multidisciplinary team][1] . . . and it's a . . . term of . . . treatment for them. And, then, if they feel like, at the end of that time, if they need to refer them on, they will, but, it's immediate, and . . . it really kind of dovetails with our service.

"[The Prosecutor]: Okay. And . . . the purpose of that is for counseling?

"[Mackey]: Is . . . to help the child heal . . . and to . . . help them move on, and . . . overcome the trauma that they've experienced." (Footnote added.)

The defendant did not object to the state's line of questioning or move to strike any of Mackey's responses.

The defendant now claims that the prosecutor impermissibly asked Mackey whether she referred the victim anywhere pursuant to her interview, and further, that the prosecutor impermissibly inquired as to the purpose of the program to which Mackey referred the victim. The defendant contends that Mackey's response—namely, that she referred the victim to a treatment program that helps facilitate the healing process for victims of sexual abuse—improperly bolstered the victim's credibility because it implied that Mackey believed the victim's allegations. The defendant concedes that he failed to preserve this claim for appeal, but nevertheless contends that, because his claim is one of prosecutorial impropriety, it is reviewable pursuant to *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987). See *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004) ("following a determination that prosecutorial [impropriety] has occurred, regardless of whether it was objected to, an appellate court must apply the *Williams* factors to the entire trial").

In *State* v. *Stevenson*, supra, 269 Conn. 572–73, our Supreme Court held that, in cases of claimed prosecutorial impropriety, "it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test."[2] (Footnote omitted.) Such a claim of prosecutorial impropriety must, however, be premised on conduct that is of

truly constitutional magnitude, and not mere evidentiary conduct clothed in constitutional garb. See *State* v. *Stevenson*, supra, 574 n.11. We conclude that the defendant's claim of prosecutorial impropriety is simply that—an unobjected to evidentiary submission by the prosecutor clothed by the defendant in constitutional garb.

Our analysis of this claim is controlled by this court's decision in *State* v. *Ruffin*, 144 Conn. App. 387, 397–99, 71 A.3d 695, cert. granted, 310 Conn. 919, 76 A.3d 634 (2013). In *Ruffin*, the defendant was convicted of one count of sexual assault in the first degree, three counts of risk of injury to a child, and one count of sexual assault in the fourth degree. On appeal, the defendant claimed, in relevant part, that "the prosecutor improperly . . . used the testimony of a clinical child interview specialist [Erin Byrne] to bolster the victim's credibility . . . ." Id., 388–89. The defendant specifically claimed that it was improper for the prosecutor to ask Byrne "what recommendations she makes for children after she has interviewed them." Id., 391–92. In response to this question, Byrne testified "that she would make recommendations if a child needs counseling services; she also stated that she 'typically' recommends a medical examination for a child after the interview. When the prosecutor asked if she made any recommendations for the victim, Byrne answered that she recommended 'counseling services as well as a medical [examination].' " Id., 392.

The defendant in *Ruffin* failed to preserve his claim of alleged prosecutorial impropriety, but sought to prevail on appeal pursuant to *State* v. *Williams*, supra, 204 Conn. 540, and *State* v. *Warholic*, 278 Conn. 354, 897 A.2d 569 (2006). *State* v. *Ruffin*, supra, 144 Conn. App. 397–98. This court concluded that "[a]lthough the defendant argues . . . that the prosecutor elicited improper testimony from Byrne, his actual claim takes issue with Byrne's testimony that she recommended counseling and a medical examination after interviewing the victim. Thus his claim is evidentiary in nature. Although our Supreme Court has held that unpreserved claims of prosecutorial impropriety are to be reviewed under the *Williams* factors, that rule does not pertain to mere evidentiary claims masquerading as constitutional violations. . . . Evidentiary claims do not merit review pursuant to *Golding* . . . because they are not of constitutional magnitude. [R]obing garden variety [evidentiary] claims . . . in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Footnotes omitted; internal quotation marks omitted.) *State* v. *Ruffin*, supra, 398–99.

Although in the present case the defendant claims

that the prosecutor elicited improper testimony from Mackey, like the defendant in *Ruffin*, the defendant's claim challenges Mackey's testimony that she referred the victim to a counseling program that facilitates the healing process for victims of sexual abuse. As such, the defendant's claim is merely evidentiary in nature, and does not present a claim of constitutional nature. Thus, the defendant cannot prevail on his claim of prosecutorial impropriety pursuant to the *Williams* factors.

## II

The defendant next claims that the court improperly admitted the testimony of William Grodski, a detective, with respect to his efforts to arrest the defendant. We conclude that the defendant was not harmed by the admission of the testimony at issue.

The following additional facts and procedural history are relevant to our resolution of this claim. Prior to trial, the prosecution indicated that it would call Grodski to testify about his efforts to arrest the defendant once an arrest warrant was issued. In the absence of the jury, the court noted that Grodski's testimony would be relevant only to show the defendant's consciousness of guilt. The court then heard an offer of proof, pursuant to which both parties conducted a full examination of Grodski. The court subsequently heard argument from both parties and decided to admit the evidence for the purpose of demonstrating the defendant's consciousness of guilt.[3]

Grodski testified at trial with respect to his efforts to arrest the defendant. He testified that a warrant for the defendant's arrest was issued on January 13, 2009. On January 22, 2009, he went to the defendant's home to execute the warrant, but was informed by the defendant's family members that the defendant was at his place of employment. Pursuant to Grodski's request, the defendant's family members indicated that they would contact the defendant and instruct him to meet Grodski at the police station. Grodski did not inform the defendant's family members that there was a warrant for the defendant's arrest.

That night, the defendant arrived at the police station; however, Grodski was never informed of his presence, and the defendant left without speaking to him. Approximately one hour later, the defendant called Grodski and asked what he needed to speak with him about. Grodski informed the defendant that he had a warrant for his arrest and that the defendant needed to turn himself in at the police station. The defendant never returned to the police station, prompting Grodski to notify the entire police department that there was an active warrant for the defendant's arrest. Grodski went to the defendant's home on several occasions, but each time was informed that the defendant was not there. Grodski also contacted the defendant's employer, who

advised Grodski that the defendant had not worked there since January, 2009. Grodski ultimately learned that the defendant was working for the same employer at another location and arrested him at that location. During the defendant's presentation of evidence, the defendant testified on his own behalf that, although he was aware that there was a warrant for his arrest, he did not turn himself in to the police because he was trying to earn enough money to hire a lawyer.

Prior to closing arguments and in the absence of the jury, the court noted that, in light of the defendant's testimony, it had decided, sua sponte, not to instruct the jury on consciousness of guilt. The court stated, "[w]hile I still think that there would be the basis to give this instruction, I've decided, in an exercise of my discretion, not to give an instruction on consciousness of guilt." On the basis of that decision, the court solicited input from both parties and constructed an instruction limiting the jury's use of the testimony of both Grodski and the defendant with respect to the events leading to the defendant's arrest. Counsel for the defendant stated that he was satisfied with the proposed limiting instruction.

During closing argument, the prosecutor did not mention Grodski's testimony or the police efforts to arrest the defendant.[4] In delivering its charge to the jury, the court stated: "[y]ou . . . heard testimony concerning the issuance of the arrest warrant and the later service of the arrest warrant upon the defendant. This testimony was admitted solely to allow you to better understand the sequence of events that led to the defendant's arrest. From these circumstances, however, you may not draw any inferences or reach any conclusion . . . for or against the state or for or against the defendant. In other words, this particular evidence may not be considered by you in any way as you determine whether or not the state has met its burden of proof in this case." Counsel for the defendant did not take exception to the court's charge.

The defendant now claims that, despite the court's instruction to the jury, Grodski's testimony was inadmissible evidence of consciousness of guilt. We are not persuaded.

We begin by setting forth the applicable standard of review. "We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted; internal

quotation marks omitted.) *State* v. *Anwar S.*, 141 Conn. App. 355, 369–70, 61 A.3d 1129, cert. denied, 308 Conn. 936, 66 A.3d 499 (2013). "[T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Miguel C.*, 305 Conn. 562, 578–79, 46 A.3d 126 (2012).

We need not consider whether the court abused its discretion by admitting Grodski's testimony. Instead, we conclude that the defendant was not harmed by the admission of the testimony because the court properly instructed the jury regarding the evidence and did not deliver a consciousness of guilt instruction. With input from both parties, the court constructed a limiting instruction directing the jury to consider Grodski's testimony for the sole purpose of establishing the sequence of events leading to the defendant's arrest. In delivering its jury charge, the court specifically stated regarding the evidence of the police efforts to arrest the defendant: "This testimony was admitted solely to allow you to better understand the sequence of events that led to the defendant's arrest. From these circumstances, however, you may not draw any inferences or reach any conclusion . . . for or against the state or for or against the defendant. In other words, this particular evidence may not be considered by you in any way as you determine whether or not the state has met its burden of proof in this case." Furthermore, during its closing argument, the state did not mention Grodski's testimony.

"Our jurisprudence is clear . . . that unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Boscarino*, 86 Conn. App. 447, 460, 861 A.2d 579 (2004). Therefore, there is no basis in this record to conclude that the jury considered the evidence for any but a benign purpose. We thus conclude that the court's decision to admit Grodski's testimony did not result in any harm to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Earlier in her testimony, Mackey had stated that one of the purposes of the multidisciplinary team is to ensure that a child who alleges sexual abuse "is referred properly to mental health treatment."

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of

a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40. The first two of these analytical prongs involve whether the claim merits appellate review, and the second two involve the merits of the claim. See *State* v. *Estrella*, 277 Conn. 458, 468 n.15, 893 A.2d 348 (2006).

[3] Following the offer of proof, the defendant argued, in relevant part, that Grodski's testimony did not constitute evidence of flight because the defendant did not move to a new residence or leave the jurisdiction. The court found that the defendant's effort to avoid apprehension does not require relocation, noting that "one can endeavor to avoid apprehension and yet remain local." The court accordingly determined that Grodski's testimony was admissible for the purpose of demonstrating the defendant's consciousness of guilt.

[4] During the defendant's closing argument, defense counsel referred to Grodski's testimony, stating: "Now, [Grodski] testified as to efforts to speak to [the defendant] and to serve a warrant on him. By his own testimony, when he initially left a message for [the defendant], he . . . went down to the police station. He's not sure how long [the defendant] waited, but, they didn't meet. But, what did [the defendant] do, he called him, and, then, he said, even though [Grodski] couldn't remember the content of the . . . conversation, the fact is, [the defendant] told you, he said, yeah, I called him. He said, yeah, well, I'll talk to you, you know, with a lawyer, which was reasonable under the circumstances. Although [Grodski] claims to have tried to get [the defendant] to turn himself in, no one is required to turn himself in if there's an outstanding warrant. There's no evidence that [the defendant] fled the jurisdiction, that he moved . . . or that he did anything but go to work and go home. In fact, he was arrested at his place of work. [Grodski] had simply called the wrong [place of employment] looking for him."

————————————————————