******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* ELVIN G. RIVERA
## (AC 39816)

DiPentima, C. J., and Keller and Moll, Js.

*Syllabus*

Convicted of the crimes of breach of the peace in the second degree, criminal mischief in the third degree and threatening in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from a dispute he had with C, a tow truck operator. C had observed the defendant's car at a condominium complex in an area marked as a fire lane and secured the car for towing. When the defendant exited a nearby garage, C informed the defendant that he was towing the defendant's car because it was parked in a fire lane. The defendant became agitated, moved toward C, who was standing near his tow truck, and struck the tow truck with a pipe. After C grabbed a can of pepper spray from his truck and sprayed the defendant in the face, the defendant dropped the pipe and pulled a knife out from his pocket. Immediately upon seeing the knife, C entered his tow truck, drove a safe distance away from the defendant and called the police, who later arrested the defendant. Thereafter, prior to trial, the state filed a motion in limine to preclude evidence of C's prior convictions and any allegations of criminal conduct against C. The defendant filed an objection, to which he attached copies of 2013 police reports relating to C's prior larceny convictions, which contained statements by C admitting that he had stolen cell phones to exchange them for drugs. The defendant argued that he intended to inquire into those specific acts, as well as C's drug use, in order to impeach C's credibility and to support his defense theory that C, motivated by his desire to fuel a drug habit, was stealing, rather than towing, the defendant's car. The trial court granted in part the state's motion in limine, concluding, inter alia, that evidence of the specific acts underlying the larceny convictions would be inadmissible. Subsequently, the trial court denied the defendant's motion to permit inquiry into the specific acts underlying C's prior breach of the peace conviction, which concerned an incident in which C, following a motor vehicle accident, attempted to use pepper spray on the other motorist in self-defense. The defendant contended that, because C pleaded guilty to the breach of the peace charge, the specific acts underlying the breach of the peace conviction could be used to establish that C was engaging in a pattern of making false self-defense claims and to impeach C's credibility in the present case, where C had sprayed pepper spray into the defendant's face allegedly in self-defense. *Held*:

1. The trial court did not abuse its discretion in prohibiting the defendant from cross-examining C as to the specific acts underlying his larceny convictions and his breach of the peace conviction: the trial court determined reasonably that C's statements from the 2013 police reports relating to C's prior larceny convictions were too remote in time to have probative value as to the incident underlying the present case, which occurred in March, 2015, that even if they were probative, they would have confused the jury, and that C's statements were not probative of C having a motive to steal the defendant's car, namely, to support a drug habit, where there was no indication in the record that C was under the influence of substances at the time of the incident underlying the present case; moreover, the trial court determined reasonably that C's guilty plea to the breach of the peace charge did not impugn his statement in the police report regarding his use of pepper spray in self-defense, such that the specific acts underlying the breach of the peace conviction were not probative of C engaging in a pattern of making false self-defense claims, and that the altercation underlying C's breach of the peace conviction, which occurred more than two years before the incident underlying the present case, was too remote and bore minimal probative value on C's credibility.

2. The defendant could not prevail on his claim that the trial court erroneously denied his motion seeking a disclosure and an in camera review of medical, mental health, and drug and alcohol treatment records of

C, thereby violating his constitutional rights to confrontation and to present a defense: the trial court had the discretion to deny the defendant's request to voir dire C with respect to his confidential records on the basis of its determination that C's records from approximately two years prior to the incident underlying the present case were too remote in time and not material, and the defendant's claim that the trial court erroneously concluded that he failed to make a sufficient threshold showing to require the disclosure and in camera examination of C's confidential records was unavailing, as the police reports relating to C's prior larceny conviction established, at most, that approximately two years before the incident underlying the present case, C had a drug addiction and intended to receive substance abuse counseling and treatment, and the court also determined reasonably that C's alleged drug use and pursuit of treatment and counseling were too remote in time to the incident underlying the present case and not material.

3. The trial court properly declined to instruct the jury that defense of property constituted a justification defense to the charge of criminal mischief in the third degree; although the defendant claimed that, pursuant to statute (§ 53a-16), defense of property applies in any prosecution for an offense, defense of property is applicable only to crimes against persons, and, thus, it does not constitute a justification defense to criminal mischief in the third degree.

4. The defendant could not prevail on his claim that the state failed to meet its burden to disprove his defense of property justification defense beyond a reasonable doubt, which was based on his claim that the evidence adduced at trial demonstrated that he believed reasonably that C was stealing his car and that physical force was necessary to prevent the larceny; there was sufficient evidence produced at trial for the jury to determine reasonably that the defendant's alleged belief that C was stealing his car was unreasonable, as the jury reasonably could have credited C's testimony and found that C, in the course of his employment, was attempting to tow the defendant's car because it was parked illegally in a fire lane, and that the defendant was aware that his car was being towed legally for that reason.

5. The defendant's claim that the state failed to meet its burden to disprove his self-defense justification defense beyond a reasonable doubt was unavailing; although the defendant claimed that the evidence adduced at trial demonstrated that he believed reasonably that C was using or was about to use deadly or nondeadly force on him and that physical force was necessary to defend himself, the evidence was sufficient for the jury to determine reasonably that the defendant's actions caused C to believe reasonably that the defendant was about to use physical force upon him and, thus, that the defendant was the initial aggressor, and, thus, the state presented sufficient evidence to disprove the defendant's self-defense claim beyond a reasonable doubt.

Argued October 18, 2018—officially released February 19, 2019

*Procedural History*

Information charging the defendant with the crimes of breach of the peace in the second degree, criminal mischief in the third degree, and threatening in the second degree, brought to the Superior Court in the judicial district of Hartford, geographical area number twelve, where the court, *Lobo, J.*, granted in part the state's motion to preclude certain evidence and denied the defendant's motion to disclose certain confidential records; thereafter, the matter was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Gail Hardy*, state's attorney, and *Courtney Chaplin*, former assistant state's attor-

ney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Elvin G. Rivera, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1), criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). On appeal, the defendant claims that (1) the trial court erroneously prohibited him from cross-examining the state's key witness, Stephen Chase, as to the specific acts underlying several misdemeanor convictions rendered against Chase, (2) the court erroneously denied his motion seeking a disclosure and an in camera review of Chase's medical, mental health, and drug and alcohol treatment records, (3) the court committed instructional error, and (4) the state failed to meet its burden to disprove his defense of property and self-defense justification defenses beyond a reasonable doubt.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our disposition of the defendant's claims. In March, 2015, Chase was employed as a tow truck operator. Chase's employer contracted with various property owners to tow vehicles that were parked illegally or otherwise without authorization on their properties. Pursuant to a contract executed by Chase's employer and Coachlight Condominiums, a condominium complex located in East Hartford, Chase was authorized to tow vehicles on the Coachlight Condominiums property that were, inter alia, parked in fire lanes and/or blocking tenants' garages.

On March 24, 2015, while patrolling the Coachlight Condominiums property in the course of his employment, Chase observed a silver car parked in an area marked as a fire lane.[2] To secure the car for towing, Chase attached the rear of the car to the boom of his tow truck and lifted the rear of the car off the ground. Soon thereafter, the defendant exited a nearby garage and angrily asked Chase why the car, which belonged to the defendant, was being towed. Chase replied that the defendant's car was parked in a fire lane. The defendant became agitated, telling Chase that "[y]ou're not f'ing towing my car . . . ." The defendant then approached his car, which was hitched to Chase's tow truck, and opened the driver's side door. Believing that the defendant would attempt to drive the car away, Chase operated his tow truck to lift the rear of the car higher off the ground. Chase then notified the defendant that he could pay $93.59 for the release of his car. The defendant returned to the garage wherefrom he had appeared and obtained a pipe approximately three or four feet in length. The defendant moved toward Chase,

who was standing next to the driver's side door of his tow truck, and struck the tow truck with the pipe. Thereafter, Chase, believing that the defendant intended to strike him with the pipe, stepped backward toward the tow truck, reached into the tow truck through the driver's side door, grabbed a can of pepper spray located in the center console, and sprayed the pepper spray into the defendant's face. The defendant became disoriented, dropped the pipe, and pulled a knife out from his pocket. Immediately upon seeing the knife, Chase entered his tow truck, drove a safe distance away from the defendant, and called the police to report the altercation.

The defendant was arrested on-site and charged with breach of the peace in the second degree in violation of § 53a-181 (a) (1),[3] criminal mischief in the third degree in violation of § 53a-117 (a) (1),[4] and threatening in the second degree in violation of § 53a-62 (a) (1).[5] In September, 2016, the defendant's case was tried to a jury. The state called Chase as its key witness during its case-in-chief. The jury found the defendant guilty on all three counts. The trial court, *Lobo*, *J.*, accepted the jury's verdict and sentenced the defendant to a total effective sentence of two years incarceration, execution suspended after fifteen months of incarceration, followed by two years of probation with special conditions. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first consider the defendant's claim that the trial court erroneously precluded him from cross-examining Chase as to the specific acts underlying several misdemeanor convictions rendered against Chase, thereby violating his constitutional rights to confrontation and to present a defense under the sixth amendment to the United States constitution.[6] Specifically, the defendant asserts that the court improperly prohibited him from inquiring into the specific acts underlying (1) convictions rendered against Chase on February 20, 2014, on three separate counts of larceny in the sixth degree in violation of General Statutes § 53a-125b[7] (2014 larceny convictions), and (2) a conviction rendered against Chase on January 17, 2013, on one count of breach of the peace in the second degree in violation of § 53a-181 (2013 breach of the peace conviction). We disagree.

We begin by setting forth the relevant standard of review and legal principles that govern our review of the defendant's claim. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show

motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . .

"[T]he confrontation clause does not [however] suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Rather, [a] defendant is . . . bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the [federal] constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . To the contrary, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . .

"In analyzing the defendant's claims, we first review the trial court's evidentiary rulings. Our standard of review for evidentiary claims is well settled. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did. . . . If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 8–11, 1 A.3d 76 (2010). Additionally, "[i]t bears emphasis that any limitation on the impeachment of a key government witness is subject to the most rigorous appellate review." (Internal quotation marks omitted.) *State* v. *Grant*, 89 Conn. App. 635, 645, 874 A.2d 330, cert. denied, 275 Conn. 903, 882 A.2d 678 (2005).

Pursuant to § 4-5 (a) of the Connecticut Code of Evidence, evidence of other crimes, wrongs, or acts of a person may not be admitted to prove the bad character, propensity, or criminal tendencies of that person, subject to certain exceptions set forth in § 4-5 (b) that are not applicable here. Pursuant to § 4-5 (c), however, evidence of other crimes, wrongs, or acts is admissible for other purposes, "such as to prove intent, identity,

malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." "Admissibility of other crimes, wrongs or acts evidence is contingent on satisfying the relevancy standards and balancing test set forth in [Connecticut Code of Evidence §§] 4-1 and 4-3, respectively. For other crimes, wrongs or acts evidence to be admissible, the court must determine that the evidence is probative of one or more of the enumerated purposes for which it is offered and that its probative value outweighs its prejudicial effect." Conn. Code Evid. § 4-5 (c), commentary. "To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Internal quotation marks omitted.) *State* v. *Boscarino*, 86 Conn. App. 447, 458, 861 A.2d 579 (2004).

Pursuant to Connecticut Code of Evidence § 6-6 (b) (1), "[a] witness may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character for untruthfulness." "The right to cross-examine a witness concerning specific acts of misconduct is limited in three distinct ways. First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the [issue] of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Internal quotation marks omitted.) *State* v. *Martinez*, 171 Conn. App. 702, 735, 158 A.3d 373, cert. denied, 325 Conn. 925, 160 A.3d 1067 (2017).

A

The defendant first claims that the trial court erroneously precluded him from cross-examining Chase as to the specific acts underlying the 2014 larceny convictions. We are not persuaded.

The following additional facts and procedural history are relevant to our disposition of the defendant's claim. On September 14, 2016, prior to the start of the second day of jury selection, the defendant orally moved the court for an order requiring the state to disclose any police reports relating to the 2014 larceny convictions and the 2013 breach of the peace conviction. The court denied the defendant's motion as to the 2013 breach of the peace conviction but granted the motion as to the 2014 larceny convictions.

On September 16, 2016, the state filed a motion in

limine to preclude evidence of Chase's convictions and any allegations of criminal conduct against Chase. On September 19, 2016, the defendant filed an objection to the motion in limine, to which he attached copies of, inter alia, three police reports relating to the 2014 larceny convictions, one dated May 29, 2013, and two dated May 30, 2013 (2013 police reports). On September 20, 2016, the court heard argument on the motion in limine. In support of the motion, the state argued, inter alia, that evidence of the specific acts underlying the 2014 larceny convictions was not probative of Chase's veracity and would mislead the jury. The state also requested that, if the court were to deem evidence relating to the 2014 larceny convictions admissible, the court limit the admission of such evidence to the names and dates of the convictions, as well as the identity of the courts in which the convictions were rendered. In opposing the motion, the defendant stated that he sought to inquire into the specific acts underlying the 2014 larceny convictions rather than offer evidence of the convictions themselves. The defendant noted that the 2013 police reports contained statements by Chase admitting that he had stolen cell phones to exchange them for drugs. The defendant argued that he intended to inquire into those specific acts, as well as Chase's drug use, in order to impeach Chase's credibility and to support his defense theory that Chase, motivated by his desire to fuel a drug habit, was stealing, rather than towing, the defendant's car on March 24, 2015.

Following argument, the court granted in part and denied in part the state's motion in limine, ruling that evidence of the 2014 larceny convictions, the dates of the convictions, the identity of the courts in which the convictions were rendered, and the sentences imposed would be admissible, but that evidence of the specific acts underlying those convictions would be inadmissible. In prohibiting evidence of the specific acts underlying the 2014 larceny convictions, the court determined that Chase's statements in the 2013 police reports were too remote, not relevant, would only serve to confuse the jury, and would inject collateral issues into the trial. The court also rejected the defendant's argument that the 2013 police reports demonstrated that Chase had a drug habit providing him with a motive to steal the defendant's car on March 24, 2015, stating that there were no allegations that Chase was under the influence of any substances at that time.

At trial, Chase testified that he had been convicted of three counts of larceny in the sixth degree in 2014. Chase did not testify as to the specific acts underlying those convictions. In addition, on cross-examination, Chase testified that he had not been under the influence of alcohol or illegal drugs on March 24, 2015, and that he had not been under the influence of illegal drugs during the seven days preceding March 24, 2015.

The defendant asserts that the 2013 police reports included statements by Chase admitting that he previously had stolen cell phones to exchange them for drugs. The defendant contends that, if elicited on cross-examination, that information would have undermined Chase's credibility and supported his defense theory that Chase, motivated by a drug habit, was stealing the defendant's car rather than towing it. In response, the state argues, inter alia, that the specific acts underlying the 2014 larceny convictions were too remote and did not demonstrate that Chase had a motive to steal the defendant's car. We agree with the state.

"It is generally held that larcenous acts tend to show a lack of veracity. . . . [L]arcenous crimes by their very nature indicate dishonesty or tendency to make false statement. . . . Moreover, [i]n common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects on a man's honesty and integrity. . . . It does not follow, however, that if the acts inquired about are indicative of a lack of veracity, the court must permit the cross-examination. Whether to permit it lies largely within the court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 87, 513 A.2d 116 (1986).

Here, the court determined reasonably that Chase's statements in the 2013 police reports were too remote in time to have probative value as to the underlying March 24, 2015 incident and, even if they were probative, they would have confused the jury. See, e.g., *State* v. *Morgan*, 70 Conn. App. 255, 274, 797 A.2d 616 (trial court free to determine that remoteness of specific acts of misconduct tended to outweigh probative value), cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). The court also determined reasonably that Chase's statements were not probative of Chase having a motive to steal the defendant's car, namely, to support a drug habit, where there was no indication in the record that Chase was under the influence of substances at the time of the underlying incident on March 24, 2015. Accordingly, we conclude that the court did not abuse its discretion in precluding the defendant from cross-examining Chase as to the specific acts underlying the 2014 larceny convictions.

B

The defendant next claims that the trial court erroneously precluded him from cross-examining Chase as to the specific acts underlying the 2013 breach of the peace conviction. We disagree.

The following additional facts and procedural history are relevant to our disposition of the defendant's claim. On September 20, 2016, after the court, in adjudicating the state's motion in limine, had precluded evidence as to the specific acts underlying the 2014 larceny convic-

tions, the defendant requested permission to be heard on an oral motion to permit inquiry into the specific acts underlying the 2013 breach of the peace conviction. The following day, the court heard argument on such motion. The defendant noted that a police report relating to the 2013 breach of the peace conviction that he had acquired, dated October 14, 2012 (2012 police report),[8] contained a statement by Chase indicating that, following a motor vehicle accident on October 14, 2012, involving Chase and another motorist, Chase attempted to use pepper spray on the motorist in self-defense. As a result of that incident, both Chase and the motorist were charged with breach of the peace in the second degree in violation of § 53a-181. Chase pleaded guilty to the breach of the peace charge, which, according to the defendant, demonstrated that Chase's statement in the 2012 police report, representing that he had used the pepper spray in self-defense, was false. The defendant contended that the specific acts underlying the 2013 breach of the peace conviction could be used to establish that Chase was engaging in a pattern of making false self-defense claims and to impeach Chase's credibility in the present case, where Chase had sprayed pepper spray into the defendant's face allegedly in self-defense. The state objected, arguing, inter alia, that the specific acts underlying the 2013 breach of the peace conviction were too remote, lacked probative value, and did not support the defendant's argument that Chase was engaging in a pattern of making false self-defense claims.

Following argument, the court concluded that it was "maintaining" its ruling that the 2013 breach of the peace conviction and the specific acts underlying that conviction were not probative of Chase's credibility and were not relevant.[9] The court determined that Chase's guilty plea to the breach of the peace charge did not amount to a concession that Chase's statement in the 2012 police report was false, and it noted that the October 14, 2012 altercation between Chase and the motorist occurred over two years prior to the underlying March 24, 2015 incident. Thus, the court determined that the 2013 breach of the peace conviction and the acts underlying it did not demonstrate that Chase was engaging in a pattern of making false self-defense claims, were too remote, had no probative value, and would inject collateral issues into the trial.

At trial, Chase testified that he had been convicted of one count of breach of the peace sometime around 2013. Chase did not testify as to the specific acts underlying that conviction.

The defendant claims that the 2012 police report reflected that Chase previously had admitted to pepper spraying another individual. He further contends that, if elicited on cross-examination, that information would have undermined Chase's credibility and supported the

defendant's theory that Chase had sprayed pepper spray in the defendant's face while attempting to steal his car, rather than in self-defense.

We conclude that the court did not abuse its discretion in prohibiting the defendant from cross-examining Chase as to the specific acts underlying the 2013 breach of the peace conviction. The court determined reasonably that Chase's guilty plea to the breach of the peace charge did not impugn his statement in the 2012 police report regarding his use of pepper spray in self-defense, such that the specific acts underlying the 2013 breach of the peace conviction were not probative of Chase engaging in a pattern of making false self-defense claims. The court also determined reasonably that the October 14, 2012 altercation underlying Chase's breach of the peace conviction, which occurred more than two years before the underlying incident on March 24, 2015, was too remote and bore minimal probative value on Chase's credibility. See *State* v. *Morgan*, supra, 70 Conn. App. 274.

In sum, we conclude that the court did not abuse its discretion in prohibiting the defendant from cross-examining Chase as to the specific acts underlying the 2014 larceny convictions and the 2013 breach of the peace conviction. Consequently, the defendant's constitutional claims fail as well.

## II

We next address the defendant's claim that the trial court erroneously denied his motion seeking a disclosure and an in camera review of medical, mental health, and drug and alcohol treatment records of Chase (Chase's records), thereby violating his constitutional rights to confrontation and to present a defense under the sixth amendment to the United States constitution.[10] Specifically, the defendant asserts (1) that the court improperly rejected his request to voir dire Chase as to Chase's records, which restricted his ability to make the requisite threshold showing to require the disclosure and in camera inspection of Chase's records, or, in the alternative, (2) that the court improperly concluded that he failed to satisfy the requisite threshold showing. We disagree.

The following additional facts and procedural history are relevant to our disposition of the defendant's claims. On September 19, 2016, before the evidentiary portion of the trial had commenced, the defendant filed a motion requesting that the state disclose, or that the court subpoena, Chase's records, and that the court conduct an in camera inspection of such records, if they existed, to determine whether they were probative of Chase's credibility (motion for disclosure). In support of the motion, the defendant stated that one of the police reports relating to the 2014 larceny convictions, dated May 29, 2013 (May 29, 2013 police report),

reflected that Chase had confessed to committing several larcenies in May, 2013, "in an effort to fuel a drug habit." Chase also informed the police that he was "starting a drug addiction program on Monday, June 3, 2013" as a "result" of one of his arrests. The defendant contended that, to the extent that they existed, Chase's records likely contained evidence that the defendant could use to impeach Chase's credibility.

On September 20, 2016, the court heard argument on the motion for disclosure. During argument, defense counsel requested an opportunity to voir dire Chase to determine whether Chase's records existed and whether they were material to Chase's credibility such that obtaining them for an in camera inspection by the court was warranted. Defense counsel argued that he was in a "vacuum," as he did not have access to any of Chase's records, but that the May 29, 2013 police report indicated that Chase apparently had undergone substance abuse treatment. Defense counsel further argued that substance abuse affects an individual's ability to comprehend, know, and correctly relate the truth, such that Chase's records could contain evidence that was probative of Chase's credibility. The state objected, arguing that it did not possess confidential records of Chase or have knowledge of any substance abuse treatment that Chase had undergone. It further argued that because the defendant had not proffered any evidence suggesting that Chase was impaired at the time of the altercation with the defendant on March 24, 2015, the information sought by the defendant by way of his motion for disclosure was immaterial, prejudicial, and had no probative value. The state also argued that obtaining and reviewing any such confidential records would cause undue delay in the case.

Following argument, the court denied the motion for disclosure. After setting forth the relevant law governing access to confidential records, the court stated: "In listening to argument, [the] court is not persuaded that the defendant has met the initial threshold for the disclosure of the records at this point in time. There is, again—it has been represented, an allegation, that back in 2013, two years prior, that [Chase] had a drug problem, and that [Chase] was seeking treatment. Again, two years prior to the allegations as contained in the case that's presently before the court. Defense counsel also argued that we don't know that—we don't know what's in the records. It's true, none of us know what's in the records. But not knowing what's in the records doesn't allow for a fishing expedition [to] discover what could or potentially be in the records. The initial threshold has to be met. What's being offered as to . . . that initial threshold is the 2013 statement alleged to be made by [Chase]. That there was an issue back then, two years ago. Again, as to how that reflects or is associated with the present matter before the court, there is nothing that this court has heard regarding [Chase's]

ability to perceive or to recollect or narrate relevant events that occurred. There's no indication as to the allegations and, again, as it . . . pertained in the police report as to substance abuse. Based on the remoteness . . . and what the court has already put forth on the record, [the] court does not find that the threshold is met at this point in time, and the request is denied."

With regard to the defendant's request to voir dire Chase as to Chase's records, after initially reserving its decision, the court ruled as follows: "[T]he court had further reflection on [defense] counsel's request as to being able to voir dire [Chase] regarding his substance abuse and mental health records. Again, those are confidential records. Again, [the] court is denying that request to voir dire [Chase] as to the mental health and medical records, again, based on the court's earlier ruling that the initial proffer this court found did not meet the original threshold to bring it to a potential in camera review or consider putting it before witnesses to explore that matter further. Again . . . the statement made by [Chase] was back from in—from 2012 and 2013, two years prior to the matter that's before the court today, and would not be material to this case. And again, just opening up potential collateral issues, which this court is not going to get into."

The following exchange then occurred on the record between defense counsel and the court:

"[Defense Counsel]: Judge, I just want a clarification on the ruling on the motion for an in camera review.

"The Court: Mm-mmm.

"[Defense Counsel]: I believe Your Honor said I could not voir dire preliminarily on the medical records or the mental health, but you didn't mention drug.

"The Court: And substance abuse, as far as the records.

"[Defense Counsel]: Okay.

"The Court: And, again, as far as what attorneys wish to get into, not restricting cross-examination or questions asked of witnesses, but as of this point in time, [the] court hasn't heard anything that would—that would cause this court to order an unsealing of those records.

"[Defense Counsel]: Your Honor, at this point—at this point in that motion for the in camera review of the records—

"The Court: Mm-mmm.

"[Defense Counsel]: —we don't have the records. So the procedure—what I requested was to question [Chase] out of the presence of the jury about where he's treated for drugs and alcohol.

"The Court: Mm-mmm.

"[Defense Counsel]: And then if—and at that point if he states, you know, that he [was] treated at X, Y and Z, and at that point that's when the—Your Honor would determine whether the threshold has been met.

"The Court: And, again, from what's been presented to the court is that there was a statement made back in 2013 that [Chase] was seeking treatment. The court's not finding that relevant as to this case that's before the court today. That that information would not be material. That individual has a right to confidentiality regarding substance abuse and mental health records. That includes potentially if and when and where and whether he's ever treated that. That confidentiality covers all of that. So, at this point in time, the court is not finding, based on the proffer, a reason to have him testify as to anything as to what his treatment is or was at any point in time, if it occurred.

"[Defense Counsel]: And Your Honor has balanced that against [the defendant's] constitutional rights to cross-examine and impeach the witnesses. And we know that—

"The Court: Absolutely.

"[Defense Counsel]: —in the proffer that I made prior is, we know, in 2013 that [Chase] had a cocaine, severe cocaine habit. That he was fueled by a drug addiction to commit larcenies. And that we claim that that's completely material and relevant to the defense in this case.

"The Court: Yes. So noted."

A

The defendant first claims that the trial court erroneously rejected his request to voir dire Chase as to Chase's records, thereby restricting his ability to make the threshold showing warranting the procurement and in camera review of Chase's records. In response, the state argues, inter alia, that the court acted within its discretion to reject the defendant's request to voir dire Chase. We agree with the state.

"[O]ur Supreme Court has established that to compel an in camera review of confidential records, a defendant must make a preliminary showing that there is a reasonable ground to believe that failure to review the records likely would impair the defendant's right to confrontation. . . . To meet this burden, the defendant must do more than assert that the privileged records may contain information that would be useful for the purposes of impeaching a witness' credibility. . . . As explained by our Supreme Court: [T]he defendant's offer of proof should be specific and should set forth the issue in the case to which the [confidential] information sought will relate." (Internal quotation marks omitted.) *State* v. *Campanaro*, 146 Conn. App. 722, 733, 78 A.3d 267 (2013), cert. denied, 311 Conn. 902, 83 A.3d 604 (2014).

Our Supreme Court has "urged trial courts to permit the defendant a certain latitude in his attempt to make [the preliminary showing required to obtain an in camera inspection of confidential records] . . . [however], in the context of [the defendant's] offer of proof to make that showing, our rules of evidence remain operative." (Citation omitted; internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 531, 673 A.2d 1117 (1996). A trial court retains the discretion to curtail inquiry that is not probative. Id., 531, 533. "While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not an easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of [his] confidential records." Id., 531–32.

Generally, a defendant is "afforded an opportunity to voir dire persons with knowledge of the contents of the [confidential] records sought" in creating a factual basis upon which the trial court might conclude that there is a reasonable ground to believe that the records would contain impeachment evidence such that a further inquiry is warranted. Id., 523. The court, however, had the discretion to deny the defendant's request to voir dire Chase with respect to Chase's records on the basis of its determinations that Chase's records were too remote in time to the underlying March 24, 2015 incident and not material. We conclude that the court did not abuse its discretion under these circumstances.

B

In the alternative, the defendant claims that the trial court erroneously concluded that he failed to make a sufficient threshold showing to require the disclosure and in camera examination of Chase's records. Specifically, the defendant contends that, notwithstanding the court's declining his request to voir dire Chase as to Chase's records, the May 29, 2013 police report satisfied the requisite threshold showing. In response, the state argues that the evidence submitted by the defendant was insufficient to meet the necessary threshold showing. We agree with the state.

"This court will review a trial court's denial of a defendant's request to conduct an in camera review of confidential records pursuant to our standard of review for evidentiary rulings. . . . Therefore, [w]e review a court's conclusion that a defendant has failed to make a threshold showing of entitlement to an in camera review of [confidential] records . . . under the abuse of discretion standard. . . . We must make every reasonable presumption in favor of the trial court's action. . . . The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Campanaro*, supra, 146 Conn. App. 732.

In the present case, the May 29, 2013 police report that the defendant submitted in support of his motion for disclosure established, at most, that Chase had a drug addiction in May, 2013, and intended to receive substance abuse counseling and treatment in June, 2013, nearly two years before the underlying March 24, 2015 incident. "However, we have never held that a history of alcohol or drug abuse or treatment automatically makes a witness fair game for disclosure of [confidential] records to a criminal defendant . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Bruno*, supra, 236 Conn. 529. Further, the court determined reasonably that Chase's alleged drug use and pursuit of treatment and counseling were too remote in time to the underlying March 24, 2015 incident and not material. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for disclosure.[11]

### III

We now turn to the defendant's claim that the trial court committed instructional error by failing to instruct the jury that defense of property constituted a justification defense to the charge of criminal mischief in the third degree. Specifically, relying on General Statutes § 53a-16, he contends that defense of property applies "in any prosecution for an offense," including criminal mischief in the third degree. (Internal quotation marks omitted.) In response, the state argues, inter alia, that defense of property is applicable only to crimes against persons and, thus, it does not constitute a justification defense to criminal mischief in the third degree. We agree with the state.

We begin by setting forth the relevant standard of review. Whether a justification defense applies to a particular crime is a question of law and, therefore, subject to plenary review. See *State* v. *Amado*, 254 Conn. 184, 197, 756 A.2d 274 (2000).

The following additional facts and procedural history are relevant to the defendant's claim. On September 22, 2016, the defendant filed a written request to charge in which he requested, inter alia, that the court instruct the jury that defense of property applied to all three of the crimes of which he was charged, including criminal mischief in the third degree. Following a charge conference, the court declined to give the charge requested by the defendant regarding defense of property. Instead, the court instructed the jury that defense of property applied only to the charges of breach of the peace in the second degree and threatening in the second degree.

"Due process requires that a defendant charged with a crime must be afforded the opportunity to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of [the defense] so that the jury may ascertain whether the

state has met its burden of proving beyond a reasonable doubt that the [crime charged] was not justified." (Internal quotation marks omitted.) *State* v. *Nathan J.*, 99 Conn. App. 713, 716, 915 A.2d 907 (2007), aff'd, 294 Conn. 243, 982 A.2d 1067 (2009). "A defendant must, however, assert a *recognized legal defense before such a charge will become obligatory. . . . State* v. *Rosado*, 178 Conn. 704, 707, 425 A.2d 108 (1979). Our Supreme Court has held that only when the evidence presented indicates the availability of one of the numerous statutory defenses, codified in the General Statutes, is the defendant entitled, as a matter of law, to a theory of defense charge." (Emphasis in original; internal quotation marks omitted.) *State* v. *Fiocchi*, 17 Conn. App. 326, 329, 553 A.2d 181, cert. denied, 210 Conn. 812, 556 A.2d 611 (1989).

Section 53a-16 provides: "In any prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense." General Statutes § 53a-21 provides: "A person is justified in using reasonable physical force *upon another person* when and to the extent that he reasonably believes such to be necessary to prevent an attempt by such other person to commit larceny or criminal mischief involving property, or when and to the extent he reasonably believes such to be necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force; but he may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19." (Emphasis added.)

This court's decision in *State* v. *Fiocchi*, supra, 17 Conn. App. 326, is instructive to our resolution of the defendant's claim. In *Fiocchi*, following a jury trial, the defendant was convicted of unlawful discharge of a firearm in violation of General Statutes (Rev. to 1985) § 53-203[12] for shooting and killing a neighbor's dog that had entered the defendant's property and had previously attacked his chickens. Id., 327–28. The trial court instructed the jury on the defense codified in General Statutes § 22-358; id., 329; which protects owners of any domestic animal or poultry from criminal and civil liability for killing any dog observed "pursuing or worrying any such domestic animal or poultry." General Statutes (Rev. to 1985) § 22-358 (a). On appeal from the judgment of conviction, the defendant claimed, inter alia, that the court erroneously failed to give the jury a "general justification" instruction. (Internal quotation marks omitted.) *State* v. *Fiocchi*, supra, 329. This court rejected that claim, determining that there was no general, noncodified justification defense recognized under Connecticut law. Id. This court further stated: "With respect to the defense of justification provided in our penal code pursuant to General Statutes §§ 53a-16 and 53a-19, which the defendant referred to in his request to charge, we conclude that those statutes do not apply

to the use of force against animals. These statutes represent a codification of the common law; see Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 219; and specifically refer to the use of force against 'persons.' 'Person' is defined under General Statutes [Rev. to 1985] § 53a-3 (1) as 'a *human being*, and, where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality.' . . . Based on a plain language reading of these statutes, it is evident that . . . §§ 53a-16 and 53a-19 apply *only* to the use of force against another *person* and not animals. Therefore, the trial court properly limited its instruction of the defense of justification to the specific statutory defense for killing a dog set forth in . . . § 22-358." (Emphasis in original; footnotes omitted.) *State* v. *Fiocchi*, supra, 329–30.

Although *Fiocchi* discussed the applicability of self-defense to a crime involving the use of force against a domestic animal, the rationale in *Fiocchi* is germane to the issue before us. The plain language of § 53a-21 mandates that a defendant must use "reasonable physical force *upon another person*" to invoke defense of property. (Emphasis added.) Accordingly, defense of property is inapplicable to crimes that involve the use of force against property, such as criminal mischief in the third degree; see General Statutes § 53a-117; and, thus, we conclude that the court correctly declined to instruct the jury that defense of property applied to the charge of criminal mischief in the third degree.[13]

## IV

Finally, we address the defendant's claims that the state failed to meet its burden to disprove his defense of property and self-defense justification defenses beyond a reasonable doubt. We disagree.

"On appeal, the standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . Moreover, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . .

"The rules governing the respective burdens borne by the defendant and the state on the justification[s] of self-defense [and defense of property] are grounded in the fact that [u]nder our Penal Code, self-defense, as defined in . . . § 53a-19 (a) [and defense of property as defined in § 53a-21 are] . . . defense[s], rather than . . . affirmative defense[s]. See General Statutes § 53a-16. Whereas an affirmative defense requires the defendant to establish his claim by a preponderance of the evidence, a properly raised defense places the burden on the state to disprove the defendant's claim beyond a reasonable doubt. See General Statutes § 53a-12. Consequently, a defendant has no burden of persuasion for a claim of self-defense [or defense of property]; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim . . . to the jury. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . .

"Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Nicholson*, 155 Conn. App. 499, 505–506, 109 A.3d 1010, cert. denied, 316 Conn. 913, 111 A.3d 884 (2015).

We also note that "[i]t is the jury's right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Wortham*, 80 Conn. App. 635, 642, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004).

The following additional facts and procedural history are relevant to our disposition of the defendant's claims. During the state's case-in-chief, Chase testified that, on March 24, 2015, he had been employed by "A & M and Central" and that, pursuant to a contract executed by his employer and Coachlight Condominiums, he was authorized to tow vehicles parked illegally in restricted zones, such as fire lanes, on the Coachlight Condomini-

ums property. Chase further testified that on March 24, 2015, he was attempting to tow the defendant's car from the Coachlight Condominiums property because he had observed it parked in a fire lane, which he identified on the basis of signs on the property designating the area in question as a fire lane. In addition, Chase testified that he informed the defendant that he was towing the defendant's car because it was parked in a fire lane, the defendant approached him and struck his tow truck with a pipe while he was standing nearby, he sprayed the defendant with the pepper spray because he believed that the defendant intended to strike him with the pipe and he "feared for [his] life," and the defendant pulled out a knife from his pocket after being sprayed with the pepper spray.

During his case-in-chief, the defendant elicited testimony from John Freitas, the vice president and director of a company named A & M Towing & Recovery, Inc. (A & M Towing). Freitas testified that A & M Towing did not have a towing services contract with Coachlight Condominiums on March 24, 2015, and that Chase had not been employed by A & M Towing on that date. Freitas also testified that a company named Central Automotive Transport (Central) had started managing A & M Towing's business operations beginning in May, 2014, and that he would not have known the identities of Central's employees who would have been driving A & M Towing's tow trucks. The defendant also elicited testimony from Gloria Stokes, the fire marshal for East Hartford. Stokes testified that she had the authority to designate fire lanes in apartment complexes in East Hartford and that she had not designated the area on the Coachlight Condominiums property where the defendant's car had been parked on March 24, 2015, as a fire lane. Stokes further testified, however, that there were signs on the Coachlight Condominiums property indicating that the area in question was a fire lane. In addition, the court granted the defendant's request to admit into evidence an undated map indicating that the area where the defendant's car had been parked was not a fire lane.

At trial, the defendant asserted defense of property and self-defense as justification defenses.[14] With respect to his defense of property defense, the defendant's theory was that he believed that Chase was stealing his car and that force was necessary to prevent the larceny. With respect to his self-defense claim, the defendant's theory was that he was entitled to use force to defend himself after Chase had sprayed and incapacitated him with the pepper spray.

A

The defendant first claims that the state failed to meet its burden to disprove his defense of property justification defense beyond a reasonable doubt. Specifically, he asserts that the evidence adduced at trial

demonstrates that he believed reasonably that Chase was stealing his car and that physical force was necessary to prevent the larceny. In response, the state argues, inter alia, that there was sufficient evidence produced at trial for the jury to determine reasonably that the defendant's alleged belief that Chase was stealing his car was unreasonable. We agree with the state.

Section 53a-21 provides in pertinent part that "[a] person is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent an attempt by such other person to commit larceny . . . ."

In the present case, if the jury credited Chase's testimony, which it was free to do, it reasonably could have found that Chase, in the course of his employment, was attempting to tow the defendant's car from the Coachlight Condominiums property because it was parked illegally in a fire lane and, further, that the defendant was aware that his car was being towed legally for that reason.[15] In turn, the jury reasonably could have determined that the defendant's alleged beliefs that Chase was committing a larceny and that physical force was necessary to prevent the larceny were unreasonable. Accordingly, construing the evidence in the light most favorable to sustaining the verdict, we conclude that the state met its burden to disprove the defendant's defense of property justification defense beyond a reasonable doubt.

B

The defendant next claims that the state failed to meet its burden to disprove his self-defense justification defense beyond a reasonable doubt. Specifically, he asserts that the evidence adduced at trial demonstrates that he believed reasonably that Chase was using or about to use deadly or nondeadly force on him and that physical force was necessary to defend himself. He further contends that the evidence does not establish that he was the initial aggressor in the altercation with Chase. In response, the state argues, inter alia, that there was sufficient evidence produced at trial for the jury to determine reasonably that the defendant was the initial aggressor. We agree with the state.

Section 53a-19 (a) provides in relevant part that "a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Section 53a-19 (c) provides in relevant part that "[n]otwithstanding the provisions of subsec-

tion (a) of this section, a person is not justified in using physical force when . . . (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

"A defendant who acts as an initial aggressor is not entitled to the protection of the defense of self-defense. . . . The initial aggressor, however, is not necessarily the first person who uses physical force. . . . Section 53a-19 contemplates that a person who reasonably perceives a threat of physical force may respond with physical force without becoming the initial aggressor and forfeiting the defense of self-defense. . . . The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used upon that other person." (Citations omitted.) *State* v. *Skelly*, 124 Conn. App. 161, 167–68, 3 A.3d 1064, cert. denied, 299 Conn. 909, 10 A.3d 526 (2010).

In crediting Chase's testimony, the jury reasonably could have found that Chase had sprayed the defendant with pepper spray, which led the defendant to pull out the knife from his pocket, only after the defendant had approached Chase with a pipe and, with Chase standing nearby, struck Chase's tow truck with the pipe. The evidence was sufficient for the jury to determine reasonably that the defendant's actions caused Chase to believe reasonably that the defendant was about to use physical force upon him and, thus, that the defendant was the initial aggressor. Accordingly, construing the evidence in the light most favorable to sustaining the verdict, we conclude that the state presented sufficient evidence to disprove the defendant's self-defense claim beyond a reasonable doubt.[16]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his principal appellant's brief and his reply brief, the defendant's claims that the state failed to disprove his defense of property and self-defense justification defenses beyond a reasonable doubt were presented in separate sections. For ease of discussion, we will address these claims together.

[2] More specifically, the car was parked in front of a garage door, above which was a sign indicating that the area in which the car was parked was a fire lane.

[3] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

[4] General Statutes § 53a-117 (a) provides in relevant part: "A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that such person has a right to do so, such person: (1) Intentionally or recklessly (A) damages tangible property of another . . . ."

[5] General Statutes § 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of

imminent serious physical injury . . . .”

[6] The defendant also claims a violation of his state constitutional rights pursuant to article first, § 8, of the Connecticut constitution. We deem the defendant's state constitutional claims abandoned because he has failed to provide an independent analysis under our state constitution. See *State* v. *Maye*, 70 Conn. App. 828, 831 n.1, 799 A.2d 1136 (2002).

[7] General Statutes § 53a-125b provides in pertinent part: “(a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less. . . .”

[8] On September 14, 2016, the court denied the defendant's oral motion seeking a disclosure of any police reports relating to the 2013 breach of the peace conviction. Nevertheless, sometime thereafter, the defendant obtained a copy of the 2012 police report, which he attached to his objection to the state's motion in limine.

[9] On the basis of the record before us, prior to its September 21, 2016 ruling, it does not appear that the court determined that the 2013 breach of the peace conviction and the specific acts underlying that conviction were not probative or relevant. On September 14, 2016, in denying the defendant's oral motion seeking a disclosure of any police reports relating to the 2013 breach of the peace conviction, the court rejected an argument raised by the defendant that any police reports relating to the 2013 breach of the peace conviction might contain admissible evidence supporting his defense theory that Chase was the initial aggressor in the underlying altercation, determining that § 4-4 (a) (2) of the Connecticut Code of Evidence allowed such evidence only in homicide or criminal assault cases. The court did not make any findings that the 2013 breach of the peace conviction and the specific acts underlying that conviction were not probative or relevant at that time.

[10] The defendant also claims a violation of his state constitutional rights pursuant to article first, § 8, of the Connecticut constitution. We deem the defendant's state constitutional claims abandoned because he has failed to provide an independent analysis of them under our state constitution. See *State* v. *Maye*, 70 Conn. App. 828, 831 n.1, 799 A.2d 1136 (2002).

[11] Although the court denied the defendant's motion for disclosure, defense counsel asked Chase on cross-examination whether he was under the influence of alcohol or illegal drugs on March 24, 2015, and whether he was under the influence of illegal drugs in the seven days preceding March 24, 2015. Chase replied “[n]o” to those inquiries. Defense counsel did not ask Chase any other questions concerning his purported substance abuse. “Where the trial court allows significant cross-examination concerning a witness' veracity, it cannot be said that the constitutional right to confrontation is implicated. . . . Although a lack of knowledge about the credibility of a witness implicates the constitutional right of confrontation, [t]hat lack of knowledge can be ameliorated by an extensive and effective [cross-examination].” (Internal quotation marks omitted.) *State* v. *Blake*, 106 Conn. App. 345, 355 n.7, 942 A.2d 496, cert. denied, 287 Conn. 922, 951 A.2d 573 (2008).

[12] General Statutes (Rev. to 1985) § 53-203 provides: “Any person who intentionally, negligently or carelessly discharges any firearm in such a manner as to be likely to cause bodily injury or death to persons or domestic animals, or the wanton destruction of property shall be fined not more than two hundred fifty dollars or imprisoned not more than three months or both.”

[13] The defendant cites to *State* v. *Morgan*, 86 Conn. App. 196, 860 A.2d 1239 (2004), cert. denied, 273 Conn. 902, 868 A.2d 746 (2005), for the proposition that, pursuant to § 53a-16, a justification defense is a defense to all crimes charged. The defendant's reliance on *Morgan* is misplaced. In *Morgan*, this court held that the trial court improperly charged the jury on self-defense by failing to instruct the jury that it was obligated to find the defendant not guilty of two counts of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1) and (2) if the jury determined that the defendant was justified in his use of force. Id., 205–206. Contrary to the assertion of the defendant in the present case, *Morgan* does not state that justification defenses apply to *all* crimes. See, e.g., *State* v. *Davis*, 261 Conn. 553, 573, 804 A.2d 781 (2002) (defendant not entitled to self-defense instruction when charged only with interfering with peace officer in violation of General Statutes § 53a-167a and assaulting peace officer in violation of General Statutes [Rev. to 1997] § 53a-167c); *State* v. *Amado*, supra, 254 Conn. 197–202 (defendant not entitled to self-defense instruction when charged with felony murder in violation of General Statutes

§ 53a-54c). Further, unlike the present case, the defendant in *Morgan* was not charged with a crime involving the use of force against property. *State* v. *Morgan*, supra, 198.

[14] The court instructed the jury that both of the justification defenses applied only to the charges of breach of the peace in the second degree and threatening in the second degree.

[15] We note that the jury could have harmonized the testimonies of Freitas and Stokes with Chase's testimony. Chase testified that he was employed by "A & M and Central." Freitas testified that Chase was not employed by A & M Towing, but that Central had taken over A & M Towing's business operations in May, 2014, and that its employees, whose identities Freitas would not have known, were driving A & M Towing's tow trucks. The jury could have credited the testimonies of Chase and Freitas to determine reasonably that Chase was employed and authorized by a towing services company to tow illegally parked vehicles from the Coachlight Condominiums property on March 24, 2015. In addition, Chase testified that he observed signs on the Coachlight Condominiums property indicating that the location where the defendant's car had been parked on March 24, 2015, was a fire lane. Stokes' testimony confirmed that there were signs on the property marking the location in question as a fire lane, although she had not designated that area as a fire lane in her capacity as East Hartford's fire marshal. The jury could have credited the testimonies of Chase and Stokes to determine reasonably that the defendant's car was parked illegally in a fire lane on March 24, 2015.

[16] In his principal appellant's brief, the defendant also claims that, if the jury determined that the defendant had used deadly physical force, the state failed to prove that any of the statutory exceptions precluding the use of deadly physical force applied. See General Statutes § 53a-19 (b). Regardless of whether the jury found that the defendant used deadly or nondeadly physical force, the jury could have determined reasonably that the defendant was the initial aggressor and, therefore, concluded that the state had disproved the defendant's self-defense claim beyond a reasonable doubt.

———————————————