******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ELVIN G. RIVERA
(SC 20277)

Robinson, C. J., and Palmer, D'Auria, Mullins,
Kahn, Ecker and Vertefeuille, Js.*

*Syllabus*

Convicted of breach of the peace in the second degree, criminal mischief in the third degree, and threatening in the second degree in connection with a confrontation involving C, a tow truck driver, the defendant appealed to the Appellate Court, claiming, inter alia, that the trial court had violated his rights to confrontation and to present a defense when it precluded him from cross-examining C about the facts underlying certain of C's prior convictions. In response to C's attempt to tow the defendant's vehicle from a fire lane at a condominium complex, the defendant confronted C, demanding to know why his vehicle was being towed. After the defendant opened the driver's door of his vehicle, C raised the vehicle off the ground to prevent the defendant from driving it off of the back of the tow truck. The defendant then retrieved a pipe from a nearby garage and used it to strike the tow truck. Thereafter, C, fearing that the defendant was going to hit him with the pipe, retrieved a can of Mace and sprayed it in the defendant's face. The defendant then took a knife out of his pocket, and C, fearing for his life, drove away in the tow truck. At trial, the defendant raised the defenses of self-defense and defense of property, arguing that C was attempting to steal the defendant's vehicle for his own financial benefit. The defendant was permitted to and did ask C about previously having been convicted of larceny. In response to the trial court's decision to preclude the defendant from cross-examining C about the specific facts underlying C's prior misdemeanor convictions of larceny and breach of the peace, the defendant claimed that this evidence would have served to impeach C by showing his character for untruthfulness and by establishing his motive, intent and interest in attempting to steal the defendant's vehicle to finance his drug habit and in lying about having sprayed the defendant with Mace in self-defense. The Appellate Court concluded that the trial court did not abuse its discretion in limiting the defendant's cross-examination of C and rejected the defendant's constitutional claims. On the granting of certification, the defendant appealed to this court. *Held*:

1. The Appellate Court correctly determined that the trial court had not abused its discretion when it precluded the defendant from cross-examining C regarding the facts underlying his prior larceny convictions in order to show that C had stolen cell phones to support a drug habit: C's motivation for the prior theft of the cell phones was not probative of his veracity, as the trial court reasonably could have concluded that C's motive for stealing them to finance a drug habit two to three years prior to the incident in the present case was not relevant to his character for truthfulness any more than the fact that he generally had a history of theft, which was made known to the jury when the defendant asked C whether he previously had been convicted of larceny, preclusion of evidence of drug use to show character for untruthfulness was in line with the general rule that propensity evidence is inadmissible, as addiction alone could not reasonably be thought to amount to more than a compelling propensity to use drugs, and the trial court reasonably could have determined that any possible connection between C's prior drug habit and his character for untruthfulness was outweighed by the potential for prejudice, as there was no evidence that C was using drugs or had a drug addiction at the time of the incident in question; moreover, there was no merit to the defendant's claim that the facts underlying C's larceny convictions were admissible to establish C's motive, interest and intent to falsely inculpate the defendant and to cover up his own misconduct, the defendant having failed to establish that C had an ongoing drug habit at the time of the incident at issue or that C's conduct underlying his prior larceny convictions was sufficiently similar to the conduct at issue in the present case.

2. The Appellate Court correctly determined that the defendant had failed

to establish that the trial court violated his rights to confrontation and to present a defense when it precluded him from cross-examining C about the fact that C, by pleading guilty to the crime of breach of the peace in connection with a prior incident involving an altercation with another individual, had admitted that he was lying about using pepper spray in self-defense during that incident: the trial court did not abuse its discretion in determining that C's prior statements to the police about acting in self-defense in connection with that prior incident were not inconsistent with his guilty plea to the charge of breach of the peace and, thus, were not evidence of C's having previously lied about acting in self-defense, as C had maintained throughout the plea proceedings on the breach of the peace charge that he had used pepper spray in self-defense; moreover, contrary to the defendant's claim that a guilty plea is an admission of guilt, a myriad of reasons may explain why an individual would plead guilty, and there is no open and visible connection between a guilty plea and an individual's state of mind at the time of the crime for which the plea is entered.

Argued February 26—officially released June 10, 2020**

*Procedural History*

Substitute information charging the defendant with the crimes of breach of the peace in the second degree, criminal mischief in the third degree and threatening in the second degree, brought to the Superior Court in the judicial district of Hartford, geographical area number twelve, where the court, *Lobo, J.*, granted in part the state's motion to preclude certain evidence and denied the defendant's motion to disclose certain evidence; thereafter, the case was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Keller* and *Moll, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Courtney M. Chaplin*, former assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. In this certified appeal, the defendant, Elvin G. Rivera, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1), criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). On appeal, he claims that the Appellate Court incorrectly determined that the trial court had not abused its discretion by precluding him from cross-examining the state's key witness, Stephen Chase, about the facts underlying Chase's prior misdemeanor convictions of larceny in the sixth degree and breach of the peace, thereby violating his constitutional rights to confrontation and to present a defense under the sixth amendment to the United States constitution. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. In March, 2015, Chase was employed as a tow truck driver.[1] Pursuant to a contract executed by Chase's employer and Coachlight Condominiums, a condominium complex at 40 Hillside Drive in East Hartford, Chase was authorized to tow vehicles on the Coachlight Condominiums property if they were parked in a restricted area, such as in front of a dumpster or in a fire lane.

On March 24, 2015, while patrolling the Coachlight Condominiums property in the course of his employment, Chase noticed a silver colored vehicle parked in front of a garage door in an area marked as a fire lane. As Chase was strapping the driver's side rear tire of the vehicle to the boom of his tow truck, the defendant exited the garage in front of which the vehicle was parked and demanded to know why his car was being towed. Chase informed the defendant that his car was parked in a fire lane and that it would cost $93.59 for the car to be released. The defendant was irate, and he opened the driver's side front door of his vehicle. Believing that the defendant intended to drive his car off the back of the tow truck, Chase entered the tow truck and raised the defendant's vehicle off the ground. The defendant moved away from his vehicle, reentered the garage, grabbed a white pipe composed of unknown material, and walked toward Chase, who was then standing by the driver's side front door of the tow truck. The defendant proceeded to hit the tow truck with the pipe. In response, Chase reached into the tow truck to retrieve a can of Mace he kept in the center console. Fearing that the defendant was going to hit him with the pipe, Chase sprayed the Mace in the defendant's face. The defendant then reached into his pocket and pulled out a knife. Fearing for his life, Chase turned, dove into the tow truck and drove around the corner

of the building. Once Chase believed he was safely away from the defendant, he parked and called 911 to report the incident. The police subsequently arrived, spoke with Chase, and then arrested the defendant.

The defendant was charged with breach of the peace in the second degree, criminal mischief in the third degree and threatening in the second degree. At trial, the state called Chase as its key witness. In response, the defendant attempted to discredit Chase and raised the defenses of defense of property and self-defense, arguing that the defendant's vehicle was not parked in an official fire lane and that Chase had attempted to steal the car for his own financial benefit. The jury found the defendant guilty on all three counts. The trial court sentenced the defendant to a total effective term of two years of incarceration, execution suspended after fifteen months, followed by two years of probation with special conditions.

The defendant appealed to the Appellate Court, claiming, among other things, that the trial court violated his constitutional rights to confrontation and to present a defense by precluding him from cross-examining Chase regarding the specific facts underlying Chase's prior misdemeanor convictions of larceny in the sixth degree and breach of the peace in the second degree. *State* v. *Rivera*, 187 Conn. App. 813, 819, 204 A.3d 4 (2019). The Appellate Court determined that the trial court had not abused its discretion by precluding this testimony and rejected the defendant's constitutional claims. Id., 828.

We subsequently granted the defendant certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court properly precluded the defendant from cross-examining the state's key witness about the specific facts underlying that witness' prior misdemeanor convictions?" *State* v. *Rivera*, 331 Conn. 911, 203 A.3d 1246 (2019). Additional facts will be discussed as required.

Before this court, the defendant renews his claims that the trial court violated his rights to confrontation and to present a defense under the sixth amendment[2] by prohibiting him from cross-examining Chase regarding the facts underlying Chase's prior convictions of larceny and breach of the peace. The defendant argues that this evidence would have impeached Chase by showing his character for untruthfulness and would have established Chase's motive, intent, and interest in the present case—namely, that Chase had attempted to steal the defendant's car to finance his drug habit and lied about macing the defendant in self-defense. The defendant contends that because motive, intent, interest, and credibility are not collateral issues, the trial court's preclusion of this evidence denied him his rights to confrontation and to present a defense.

In reviewing the defendant's claim, we are guided by well established legal principles. The sixth amendment guarantees a defendant the rights to confrontation and a meaningful opportunity to present a defense. See, e.g., *State* v. *Hedge*, 297 Conn. 621, 634, 1 A.3d 1051 (2010) (right to present defense); *State* v. *Colton*, 227 Conn. 231, 248–49, 630 A.2d 577 (1993) (right to confrontation). Under the sixth amendment, "[c]ross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Colton*, supra, 249. Although "the extent of the proof of details lies in the court's discretion"; (internal quotation marks omitted) id.; "the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment . . . [and] may deprive the defendant of his constitutional right to present a defense." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 9, 1 A.3d 76 (2010).

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 746, 657 A.2d 611 (1995). As a result, we analyze whether limitations on cross-examination violated a defendant's rights to confrontation and to present a defense only if the trial court improperly precluded the testimony. See, e.g., *State* v. *Davis*, supra, 298 Conn. 10–11. Thus, we must "first review the trial court's evidentiary rulings. Our standard of review for evidentiary claims is well settled. To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) Id.

I

The defendant first claims that the Appellate Court incorrectly determined that he did not establish that the trial court violated his rights to confrontation and to present a defense by precluding him from cross-examining Chase about the specific facts underlying Chase's three prior larceny convictions—specifically, the fact that Chase stole cell phones to finance a drug habit. The defendant argues that, because a larceny conviction is probative of veracity, these underlying facts would have impeached Chase's credibility and, thus, were admissible under §§ 4-4 and 6-6 of the Connecticut Code of Evidence. He also argues that these underlying facts would have established Chase's motive, intent, and interest—namely, that Chase had

similarly attempted to steal the defendant's car to finance his drug habit and had testified against the defendant to cover up his own illegal actions—and, thus, were admissible under §§ 4-5 (c) and 6-5 of the Connecticut Code of Evidence. We conclude that the trial court did not abuse its discretion by limiting cross-examination of Chase in this manner and that the defendant has failed to establish a constitutional violation.

The following additional facts and procedural history are relevant to this claim. Prior to the start of evidence, the state moved to preclude defense counsel from inquiring into Chase's past criminal convictions and any other prior misconduct. The defendant objected, arguing that the facts underlying Chase's prior misdemeanor convictions of larceny were admissible under § 6-6 for impeachment purposes to show a lack of veracity and under § 4-5 (c) for the limited purposes of showing motive, intent, and interest. Specifically, the defendant sought to inquire into the underlying facts of three larceny convictions that were based on four incidents in 2013. According to the defendant, on four prior occasions between 2012 and 2013, Chase had stolen cell phones from different stores. Police reports regarding the thefts, which the defendant attached to his memorandum of law in opposition to the state's motion, noted that Chase had admitted that he stole the cell phones to finance a drug habit. The defendant raised the same arguments regarding veracity, motive, intent, and interest that he now raises before this court. Additionally, he argued that Chase's drug use was admissible for credibility and impeachment purposes to test his perception and ability to recall events. Defense counsel clarified at argument before the start of trial that he did not seek to ask Chase about the convictions themselves, only the underlying facts supporting those convictions.

The trial court ruled that because larceny was relevant to veracity, defense counsel could impeach Chase's credibility by inquiring about his prior larceny convictions,[3] but the court found that the underlying facts of those convictions were irrelevant as to Chase's veracity or motive. Therefore, the court precluded counsel from inquiring into the specific facts underlying those convictions. The trial court found that Chase's prior drug habit from 2013 was too remote in time to be relevant to a motive to steal the defendant's car, given that there was no evidence that Chase had a continuing substance abuse problem or was under the influence of drugs at the time of the incident at issue. The trial court determined that whether Chase stole cell phones to finance a drug habit in 2013, without evidence even of drug *usage* in 2015—let alone drug dependency—was "a collateral issue . . . not probative as to what's before the court today and would only serve to confuse the jury."

On cross-examination, defense counsel asked Chase

if he previously had been convicted of larceny, to which Chase responded in the affirmative. Additionally, defense counsel asked Chase whether, on the day of the incident at issue or during the seven days before the incident, he had been under the influence of any illegal drugs, to which Chase responded in the negative.

During closing argument to the jury, defense counsel argued that the defendant had acted in self-defense and in defense of his property because Chase, "a vigilante road predatory tow truck operator," was illegally towing the defendant's car to steal it and was motivated by personal financial gain. Defense counsel argued that, when the defendant caught Chase stealing the car, Chase sprayed Mace at the defendant and damaged his own truck to cover up his actions. Defense counsel urged the jury to disregard Chase's testimony, impeaching his credibility by arguing that Chase had a motive to lie—to cover up his actions so he would not be charged with larceny and assault. Further attacking Chase's credibility, defense counsel argued that Chase had a tendency to lie, given his three prior larceny convictions.

The trial court subsequently instructed the jury on the defenses of self-defense and defense of property but limited the applicability of these defenses to the charges of breach of the peace in the second degree and threatening in the second degree. It did not instruct the jury on these defenses regarding the charge of criminal mischief in the third degree. The trial court also instructed the jury that it could consider Chase's larceny convictions in evaluating his credibility.

A

The defendant argues that the Appellate Court incorrectly determined that the trial court had not abused its discretion by precluding cross-examination about the facts underlying Chase's prior larceny convictions because this testimony was admissible under §§ 4-4 and 6-6 of the Connecticut Code of Evidence as evidence of Chase's character for untruthfulness. We disagree.

Sections 4-4 and 6-6 of the Connecticut Code of Evidence govern whether witnesses may be asked about specific conduct to impeach their character for truthfulness. These rules "[prevent] the use of a general trait of character or propensity to prove that a person acted that way on a specific occasion"; C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 4.12.2, p. 166; but make an exception for evidence of a witness' character for untruthfulness. "Subdivision (3) [of § 4-4 (a)] authorizes the court to admit evidence of a witness' character for untruthfulness or truthfulness to attack or support that witness' credibility. . . . Section 6-6 addresses the admissibility of such evidence and the appropriate methods of proof." (Citation omitted.) Conn. Code Evid. § 4-4, commentary. Specifically, § 6-

6 (b) (1) permits the questioning of a witness about instances of the witness' conduct if the conduct is probative of the witness' veracity. Conn. Code Evid. § 6-6 (b) (1) ("[a] witness may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character for untruthfulness").

"[T]he right to cross-examine a witness pertaining to specific acts of misconduct is limited in three distinct ways. . . . First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the issue of veracity. . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discretion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Citation omitted; internal quotation marks omitted.) *State* v. *Valentine*, 255 Conn. 61, 71, 762 A.2d 1278 (2000).

As to the first and second limitations, "[w]hether particular acts of misconduct are relevant to lack of veracity depends on whether they have a logical tendency to indicate a lack of veracity. . . . [U]nless particular acts of misconduct are indicative of a lack of veracity, it is error to permit cross-examination concerning them, however much they may be indicative of bad moral character. . . . It does not follow, however, that if the acts inquired about are indicative of a lack of veracity, the court must permit the cross-examination." (Citations omitted; footnote omitted) *Vogel* v. *Sylvester*, 148 Conn. 666, 675–76, 174 A.2d 122 (1961). "In considering whether the court abused its discretion in this regard, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Internal quotation marks omitted.) *State* v. *Annulli*, 309 Conn. 482, 495, 71 A.3d 530 (2013).

"We have consistently recognized that crimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements." (Internal quotation marks omitted.) *State* v. *Askew*, 245 Conn. 351, 363–64, 716 A.2d 36 (1998); see *State* v. *Martin*, 201 Conn. 74, 87, 513 A.2d 116 (1986); *State* v. *Lindsay*, 143 Conn. App. 160, 173, 66 A.3d 944, cert. denied, 310 Conn. 910, 76 A.3d 626 (2013). This does not mean, however, that the trial court was required to permit the defendant to ask Chase about the underlying facts of his larceny convictions without limitation. It is the larceny itself that is indicative of veracity. The defendant was permitted to, and did, question Chase about having been convicted of larceny. As a result, the defendant was able to present evidence to the jury that Chase previously had been involved in stealing. Cf. *State* v. *Martin*, supra, 87–89 (trial court abused its discretion by not allowing defense counsel to inquire whether

victim ever had been involved in stealing).

The trial court prevented the defendant from inquiring into the facts underlying those prior larceny convictions, including Chase's motivation for the prior thefts, because Chase's motivation on those prior occasions was not probative of his veracity. The trial court could have reasonably concluded that Chase's alleged motive for stealing cell phones to finance a drug addiction two to three years prior to the incident in the present case was not relevant to his character for truthfulness any more than the fact that he generally had a history of theft.

In response, and relying principally on an Illinois appellate court decision, the defendant argues that Chase's history of drug abuse is probative of veracity because " 'habitual users of narcotics become habitual liars.' " *People* v. *Accardo*, 195 Ill. App. 3d 180, 194, 551 N.E.2d 1349, appeal denied, 133 Ill. 2d 560, 561 N.E.2d 695 (1990). Although drug addiction or drug use may be probative of a witness' credibility for other reasons, such as a witness' ability to accurately perceive and to remember events, this court has rejected the proposition that drug addiction is probative of veracity. See *State* v. *Dobson*, 221 Conn. 128, 138, 602 A.2d 977 (1992) ("narcotics convictions are crimes which do not reflect directly on the credibility of one who has been convicted of them" (internal quotation marks omitted)); see also *State* v. *Lambert*, 58 Conn. App. 349, 357, 754 A.2d 182 (evidence of drug dealing is not relevant to veracity), cert. denied, 254 Conn. 915, 759 A.2d 507 (2000); *State* v. *Jaynes*, 35 Conn. App. 541, 553–55, 645 A.2d 1060 (evidence that witness had drug addiction did not require trial court to give instruction that drug addiction could be considered in determining witness' credibility), cert. denied, 231 Conn. 928, 648 A.2d 880 (1994); *State* v. *Irving*, 27 Conn. App. 279, 288 n.5, 606 A.2d 17 ("narcotics offenses are not relevant to prove truthfulness or veracity"), cert. denied, 222 Conn. 907, 608 A.2d 694 (1992).

Preclusion of evidence of drug use to show character for untruthfulness is in line with our general rule that propensity evidence is inadmissible; see, e.g., *State* v. *Stenner*, 281 Conn. 742, 752, 917 A.2d 28, cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007); because "addiction alone cannot reasonably be thought to amount to more than a compelling propensity to use narcotics . . . ." *Robinson* v. *California*, 370 U.S. 660, 678–79, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962) (Harlan, J., concurring). Accordingly, a defendant's constitutional rights to confrontation and to present a defense are not violated when the trial court precludes a defendant from impeaching a witness' character for truthfulness through evidence of drug use. See *State* v. *Dobson*, supra, 221 Conn. 137–38.

Moreover, exercising its discretion, the trial court

reasonably could have determined that any possible connection between Chase's prior drug habit and his character for untruthfulness was outweighed by the potential prejudice in a case in which the defendant presented no evidence that Chase was using narcotics or had a drug addiction during the relevant time period. See *State* v. *James*, 211 Conn. 555, 571–72, 560 A.2d 426 (1989) ("[e]ven if the evidence did involve untruthfulness, the court was well within its discretion in excluding it because of its remoteness in time, its minimal bearing on credibility, and its tendency to inject a collateral issue into the trial"); see also part I B of this opinion.

Accordingly, we reject the defendant's argument that the Appellate Court incorrectly determined that the trial court had not abused its discretion by precluding him from inquiring into the underlying facts of Chase's prior larceny convictions to impeach Chase's character for untruthfulness.

B

The defendant next argues that the facts underlying Chase's larceny convictions were relevant to Chase's intent to steal the defendant's vehicle to finance his drug habit because Chase previously had stolen to finance his drug habit and, thus, was motivated to falsely inculpate the defendant to cover up his own misconduct. On this basis, the defendant argues that this testimony was admissible under §§ 4-5 (c) and 6-5 of the Connecticut Code of Evidence to establish motive, interest, and intent. We disagree.

Evidence of prior misconduct is not admissible "merely to show an evil disposition of an [individual], and especially the predisposition to commit the crime [at issue]." (Internal quotation marks omitted.) *State* v. *Stenner*, supra, 281 Conn. 752. Under §§ 4-5 (c) and 6-5 of the Connecticut Code of Evidence although, this evidence may be admissible if it is relevant to an individual's motive, intent, or interest in testifying. See Conn. Code Evid. § 4-5 (c) ("[e]vidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent . . . [or] motive"); Conn. Code Evid. § 6-5 ("[t]he credibility of a witness may be impeached by evidence showing bias for, prejudice against, or interest in any person or matter that might cause the witness to testify falsely"). "We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh [its] prejudicial effect." (Internal quotation marks omitted.) *State* v. *Stenner*, supra, 752.

For prior misconduct to be relevant to a witness' intent, it must permit the reasonable inference that, "under similar circumstances, the [witness] engaged in

intentional conduct similar to a form of the intentional conduct [at issue]." *State* v. *Nunes*, 260 Conn. 649, 688, 800 A.2d 1160 (2002). Nevertheless, relevant prior misconduct evidence may be precluded if its admission would cause undue delay in the trial or would unduly distract or confuse the jury. See *State* v. *Hill*, 307 Conn. 689, 698, 59 A.3d 196 (2013).[4]

Case law establishes that evidence of an individual's prior drug use may be relevant to intent, motive, and interest. See *State* v. *Feliciano*, 256 Conn. 429, 452–53, 778 A.2d 812 (2001) (evidence of defendant's having drug habit and stealing to finance drug habit one month before robbery and murder at issue was relevant to show defendant had motive and intent to commit robbery that led to victim's murder); *State* v. *Colton*, supra, 227 Conn. 250–51 (trial court abused its discretion by precluding evidence of witness' drug habit at time she first came forward to provide police information—fourteen months after victim's murder and once reward money was offered—to contradict witness' testimony that she was not using drugs at time of trial and to establish both that she lied and was motivated to falsely accuse defendant to finance her drug habit); *State* v. *Schonagel*, 189 Conn. 752, 768, 459 A.2d 106 (1983) (on retrial, evidence of defendant's drug habit at time of arson could be admissible to establish that he was motivated to commit arson to finance his drug habit, although state must establish first that he could not afford drug habit), vacated on other grounds, 465 U.S. 1002, 104 S. Ct. 990, 79 L. Ed. 2d 224 (1984). The present case is distinguishable from those cases, however, because the defendant failed to establish a proper foundation—namely, some evidence from which the jury reasonably could have concluded that Chase had an ongoing drug habit at the time of the incident at issue and that Chase's prior misconduct was sufficiently similar to the conduct at issue. "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State* v. *Barnes*, supra, 232 Conn. 747.[5] Without an offer of proof that a witness had a drug habit at the time of the incident at issue, inquiry into whether the witness had a drug habit and whether this habit motivated the witness' actions or testimony constitutes an improper fishing expedition. Id., 749–50.

The state conceded in its brief to this court that, if there had been any evidence that Chase had an ongoing drug habit at the time of the incident at issue, evidence of that habit may have been relevant to motive, intent, and interest. The defendant offered no such evidence. Rather, he merely argued that, because Chase had a drug habit approximately two years prior to the incident, he likely still had a drug habit and that this drug habit likely motivated him to attempt to steal the defendant's car because it motivated him to steal cell phones

two years prior. To list these speculative leaps is to explain why the trial court reasonably could have prevented this line of inquiry.

Clearly, Chase's drug addiction at the time he committed the 2012 and 2013 larcenies would be relevant to his motive and intent to steal the cell phones during that period of time. This evidence, however, without more, is not relevant to his motive and intent to commit a larceny approximately two years later, under significantly different circumstances. Although the passage of two years may not be long enough to deem the larceny convictions themselves too remote, for general credibility purposes, this passage of time, without evidence that Chase continued to have a drug habit in 2015 that motivated him to steal, substantially diminished the relevancy of the underlying facts relating to those convictions.[6] Additionally, although both sets of facts involve theft, there are no other similarities between the conduct in the present case and the conduct underlying Chase's previous larceny convictions. See *State* v. *Nunes*, supra, 260 Conn. 688 (requiring "similar circumstances" for prior misconduct to be relevant to intent). This lack of similarity, as well as the lack of evidence that Chase had an ongoing drug habit at the time of the incident at issue, supports the trial court's conclusion that this evidence had minimal, if any, probative value on the issues of motive, intent, and interest, all of which were contingent on Chase's having had a drug habit at the time of the incident at issue.

In response, the defendant argues that the facts of the present case are nearly identical to the facts in *Colton*, in which the state's main witness came forward fourteen months after the unsolved murder of the victim to identify the defendant as having been with the victim at the scene of the crime and to implicate him in the murder only after the state had offered reward money in the case. *State* v. *Colton*, supra, 227 Conn. 234, 239. The defendant's theory of defense in *Colton* was that the reward money motivated the witness, who was a prostitute and a drug addict, to falsely identify the defendant and to testify against him because she had an ongoing drug habit she needed money to finance. Id., 240. The witness testified at trial that, at the time of the murder, she in fact had a drug habit and was a prostitute but that, at the time she decided to give her statement to the police, she no longer used drugs or worked as a prostitute, and, thus, her prior drug habit did not motivate her to falsely testify. Id., 241. To prove both that the witness lied and that she was motivated by her desire for money to buy drugs, the defendant proffered the testimony of two acquaintances of the witness, who had seen her use drugs and work as a prostitute both at about the time she came forward with the information inculpating the defendant and at about the time of her trial testimony. Id., 243–44. The trial court precluded the defendant from offering this

evidence. Id. We determined that the trial court in *Colton* abused its discretion because the testimony regarding the witness' drug use and prostitution in the years after the murder, coupled with the testimony about her drug use and prostitution before and at the time of the murder, strongly indicated that the witness not only had an ongoing drug problem at the relevant time but also had a motive to falsely accuse the defendant to finance her habit. Id., 250–52.

The facts of the present case are distinguishable from the facts in *Colton*. Although the defendant in the present case proffered evidence that Chase had a prior drug habit, and although Chase denied at trial that he had a drug habit at the time of the incident at issue, the similarities between the two cases end there. The defendant offered no evidence that Chase had an ongoing drug habit at the time of the incident at issue. The defendant appears to argue that, because he offered the police reports regarding the larcenies in support of his proffer that Chase had a drug addiction two years prior to the incident at issue, it was the state's burden to establish how and when Chase overcame that addiction, and that, in the absence of such evidence, the defendant had satisfied his burden of laying a sufficient foundation. Additionally, to the extent any additional evidence was required to satisfy this burden, the defendant argues that, because the trial court precluded him from accessing Chase's medical and substance abuse records, a decision that the Appellate Court upheld on appeal, he was prevented from offering any such evidence. As *Colton* makes clear, however, medical records are not the only means of establishing that an individual has a drug habit, and it is the proffering party that bears the burden of establishing a sufficient foundation.[7]

In the absence of this evidence, evidence of Chase's prior drug use had little or no relevance as to whether Chase had a drug habit at the time of the incident at issue and, thus, had minimal relevance to Chase's motive, intent, and interest. Accordingly, we conclude that the trial court did not abuse its discretion by precluding inquiry into the underlying facts of Chase's prior larceny convictions, and, thus, the defendant failed to establish a constitutional violation.

## II

The defendant next claims that the Appellate Court incorrectly determined that he did not establish that the trial court had violated his rights to confrontation and to present a defense by precluding him from cross-examining Chase about the specific facts underlying Chase's prior breach of the peace conviction—specifically, the fact that, by pleading guilty to the breach of the peace charge, he admitted that he had lied about using pepper spray in self-defense—because they were relevant to veracity, intent, motive, and a common

scheme or pattern. We disagree.

The following additional facts are necessary to our review of this claim. Prior to the start of evidence, defense counsel proffered a police report that showed that, in 2012, Chase, while in his motor vehicle, had gotten into an altercation with another driver. Chase told the police that the other driver had tried to run him off the road, then exited his vehicle, approached Chase's vehicle, and attempted to open Chase's car door. Chase told the police that he responded by spraying pepper spray at the other driver in self-defense. The other driver provided the police with a different version of events, stating that Chase had been swerving and "[b]rake [c]hecking" him and that, when both cars stopped, he exited his vehicle and approached Chase to ask what was wrong when Chase sprayed pepper spray at him. Unable to determine fault due to the inconsistencies in the two versions of events, the police officer issued Chase and the other driver misdemeanor summons tickets for breach of the peace. Subsequently, Chase, who represented himself, pleaded guilty to the breach of the peace charge and received a relatively minor fine but maintained that he had been acting in self-defense when he sprayed the pepper spray.

Defense counsel in the present case argued that he intended to use these underlying facts to impeach Chase because Chase's guilty plea was the equivalent of an admission that he had no valid defense of self-defense and, thus, had lied about using pepper spray in self-defense.[8] Evidence of this lie, defense counsel argued, was admissible under § 4-5 (c) of the Connecticut Code of Evidence because it was relevant to establish that Chase had a common scheme or pattern of falsely accusing other people of being the initial aggressor and falsely raising the defense of self-defense to cover his tracks when he engaged in misconduct. Further, defense counsel argued, also pursuant to § 4-5 (c), that this conduct was admissible to show Chase's motive and intent because it showed that Chase had a habit of claiming self-defense to escape prosecution for his misconduct and, thus, he was not acting in self-defense in the present case.

The trial court declined to permit inquiry into Chase's breach of the peace conviction and the underlying facts of that conviction. The trial court determined that the nature of a conviction of breach of the peace was not indicative of veracity and did not impeach Chase's credibility by showing that he lied about having acted in self-defense. Specifically, the court was unwilling to find that Chase's guilty plea was the equivalent of an admission that he lied about having acted in self-defense, especially in light of Chase's having maintained at the plea proceedings that he had in fact acted in self-defense. Because the trial court found that his guilty plea was not inconsistent with his statements regarding

self-defense, it also found that this evidence was not relevant to intent, motive, absence of malice, knowledge, or a common scheme or plan. Additionally, the trial court determined that this evidence would inject collateral issues into the trial and lacked probative value due to its remoteness in time.

Despite the court's ruling, when the state asked Chase on direct examination if he previously had been convicted of any crimes, he admitted that he had been convicted of both larceny and breach of the peace. On cross-examination, defense counsel similarly inquired into Chase's prior convictions, and again Chase admitted to the breach of the peace conviction. During closing argument, defense counsel urged the jury to reject Chase's testimony as dishonest and motivated by his own desire to cover up his attempted theft of the defendant's car and his assault of the defendant, relying in part on Chase's prior breach of the peace conviction to show that he previously had "engaged in fighting behavior."

For the facts underlying Chase's prior breach of the peace conviction to be relevant to veracity, intent, motive, or common scheme, the defendant would have to be correct that Chase's guilty plea to the breach of the peace charge was inconsistent with his statements to the police that he sprayed another person with pepper spray in self-defense, showing that he lied about acting in self-defense. Whether two statements are actually inconsistent is a determination that "lies within the discretionary authority of the trial court." *State* v. *Avis*, 209 Conn. 290, 302, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989).

We conclude that the trial court did not abuse its discretion in determining that Chase's prior statements to the police about acting in self-defense were not inconsistent with his guilty plea to the charge of breach of the peace and, thus, were not evidence of Chase's having previously lied about acting in self-defense. The trial court found, and the defendant does not challenge, that Chase maintained that he had been acting in self-defense throughout the plea proceedings. Rather, the defendant argues that a plea of guilty is an admission of guilt and, thus, is a concession by Chase that he had no viable self-defense claim and had lied about acting in self-defense, regardless of his having maintained that he acted in self-defense. This court has recognized, however, that a myriad of reasons may explain why an individual would plead guilty, and, thus, there is "simply no open and visible connection" between a guilty plea and the individual's state of mind at the time of the crime. *State* v. *Tony M.*, 332 Conn. 810, 834, 213 A.3d 1128 (2019). On the basis of the limited record before this court regarding the plea proceedings for Chase's breach of the peace conviction, we cannot say that the trial court abused its discretion in finding that Chase's

guilty plea was not an admission that he did not have a valid defense of self-defense and, thus, did not establish that he previously had lied about acting in self-defense. Because this evidence was not relevant to whether Chase previously lied about acting in self-defense, the facts underlying Chase's breach of the peace conviction were not relevant to veracity, motive, intent, or a common scheme or pattern. Thus, the trial court did not abuse its discretion by precluding this evidence, and, therefore, the defendant has failed to establish a constitutional violation.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** June 10, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] There was some confusion at trial about the identity of Chase's employer. Chase testified on direct examination that he was employed by A & M Towing & Recovery, Inc. (A & M Towing), and an entity he identified as Central Groups. He clarified on cross-examination that he had been hired by A & M Towing but that, at the time of the incident at issue, A & M Towing had been purchased by Central Groups. Subsequently, the defendant offered the testimony of John L. Freitas, the vice president and director of A & M Towing, who testified that, at the time of the incident at issue, Central Automotive Transport had not purchased A & M Towing but had entered into a management agreement with A & M Towing. Freitas indicated that, although A & M Towing had no record of employing Chase, Central Automotive Transport might have employed him, but Freitas did not have access to those records.

[2] Although the defendant asserts in his brief to this court that the trial court's ruling also violated his rights under article first, § 8, of the Connecticut constitution, "[b]ecause the defendant has not provided an independent analysis of his state constitutional claim under *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we consider that claim abandoned and unreviewable." *State* v. *Arias*, 322 Conn. 170, 185 n.4, 140 A.3d 200 (2016).

[3] The trial court also admitted Chase's prior misdemeanor convictions of larceny under § 6-7 of the Connecticut Code of Evidence. The defendant suggests that this basis was improper. We have no occasion to review this issue because it was to the benefit of the defendant, who relied on these convictions to impeach Chase during cross-examination and to attack his credibility during closing argument.

[4] The defendant relies on *Hedge* to argue that, because the prior misconduct evidence tends to negate his guilt by supporting his defenses of self-defense and defense of property, this evidence is not only admissible under § 4-5 (c), but also that the Code of Evidence has "extremely limited applicability" to the extent that it limits admissibility of this type of evidence. *State* v. *Hedge*, supra, 297 Conn. 653. *Hedge* is distinguishable, however, because, in that case, we held that prior misconduct may be admissible under what is now § 4-5 (c) to establish third-party culpability. Given the strict requirements for establishing third-party culpability, we determined that the policies underlying §§ 4-4 (a) and 4-5 (a) of the Connecticut Code of Evidence have "extremely limited applicability" under those circumstances, as unduly restricting the defendant's ability to establish his claim would be unfair. Id., 650–53 (holding that prejudice does not weigh in balancing test because third party against whom evidence is offered to exculpate defendant is not party to case and, thus, prior misconduct of third party is admissible unless outweighed by " 'undue waste of time and confusion of the issues' "). The defendant in the present case, however, was not offering this evidence to establish third-party culpability for his own breach of the peace—that he was innocent and Chase the actual perpetrator—but to support his defenses of self-defense and defense of property by establishing Chase's intent, motive, and interest—that Chase intended to steal the defendant's car to finance a drug habit, motivating him to lie about acting in self-defense, giving him an interest in the outcome of this case. We therefore do not find the language in *Hedge* applicable in the present case.

Moreover, although *Hedge* recognized that prior misconduct may be admissible under what is now § 4-5 (c) if it is relevant to the defendant's theory of defense, for the facts underlying Chase's larceny conviction to be relevant to the defense theory in the present case, those facts would have to be relevant to Chase's intent and motive—namely, that he intended to steal the defendant's vehicle and, thus, was motivated to falsely assert self-defense and to falsely inculpate the defendant. Because we conclude that the trial court did not abuse its discretion in determining that this evidence was not relevant to intent and motive, it likewise was not relevant to the defendant's theory of defense.

[5] "This may be accomplished in one of three ways. First, the defendant can make an offer of proof. . . . Second, the record independently can be adequate to establish the relevance of the proffered testimony. . . . Finally, the defendant can establish a proper foundation for the testimony by stating a 'good faith belief' that there is an adequate factual basis for his inquiry. . . . A cross-examiner may inquire into the motivation of a witness if he or she has a good faith belief that a factual predicate for the question exists." (Citations omitted.) *State* v. *Barnes*, supra, 232 Conn. 747.

[6] In determining that the trial court did not abuse its discretion by precluding this testimony, the Appellate Court's analysis relied on the trial court's finding that there was no evidence that Chase was *under the influence* of drugs at the time of the incident at issue. *State* v. *Rivera*, supra, 187 Conn. App. 825. The issue, however, is not whether the facts underlying Chase's prior larceny convictions were relevant to his drug use *on a particular day*, including the day of the incident but, rather, whether this evidence was relevant to whether Chase had an ongoing drug habit during the time period at issue that might have motivated him to steal. An individual could have an ongoing drug habit but not be under the influence of drugs on a particular day, especially if that individual was in need of money to support his drug habit.

In the present case, the trial court found that there was no evidence of Chase either being under the influence of narcotics or having a substance abuse habit at the time of the incident at issue. It is the latter, not the former, that supports the trial court's determination that the facts underlying Chase's larceny convictions two years before the incident were too remote in time to be relevant to his motive, intent, or interest. Contrary to the Appellate Court's reasoning that this prior misconduct evidence was too remote because it occurred approximately two years prior to the incident at issue and because there was no evidence that Chase was under the influence of drugs at the time of the incident at issue, if there had been evidence that Chase had a continuing drug habit at the time of the incident at issue, regardless of whether he was under the influence of drugs during the incident at issue, the facts underlying his prior larceny convictions would have had increased relevancy to his intent, motive, and interest. It is the lack of this evidence that renders the prior misconduct too remote, thereby diminishing its relevancy. Without some evidence that Chase had a continuing drug habit, the trial court reasonably determined that evidence of drug addiction two years prior to the incident at issue was too remote in time to be relevant to whether Chase was motivated to steal the defendant's vehicle to finance a drug habit that may no longer have existed.

[7] Additionally, the defendant offered no evidence that Chase needed to steal to finance a drug habit. For example, although there was testimony at trial that there was some confusion over which company Chase worked for at the time of the incident; see footnote 1 of this opinion; the defendant offered no evidence that Chase was unemployed at this time.

[8] From the trial transcript of argument on this issue, it appears the defendant proffered a transcript from the plea proceedings regarding Chase's breach of the peace conviction. Both the state and the trial court reviewed the transcript, and the trial court relied on it in making its determination. The defendant did not have the transcript marked for identification or admitted as a court exhibit, however, and, thus, the transcript is not part of the record before us. Accordingly, our review of what occurred at Chase's plea proceeding is limited to the findings of fact made by the trial court, which are limited to the fact that Chase pleaded guilty to the breach of the peace charge but also maintained that he was acting in self-defense. Specifically, the court found: "Prior to entering his plea, he was still reiterating, in that case back in—or that incident back in 2012, that the other individual ran him off the road, approached his car, and, as he approached the car, he tried to spray it. So, as far as making the jump from, because he entered his plea to a breach of [the] peace, he wasn't still claiming

that he was doing this in self-defense. [The] [c]ourt's not willing to make that jump."

———————————————————